UNITED STATES of America,
Plaintiff-Appellee,

v.

William M. CHANEY,
Defendant-Appellant.

No. 76–2164.

United States Court of Appeals,
Seventh Circuit.

Heard April 18, 1977.

Decided July 27, 1977.

Harold E. Hutson, Indianapolis, Ind., for defendant-appellant.

James B. Young, U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, SWYGERT and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

In May 1976, a four-count indictment was returned against defendant. At the start of the ensuing jury trial, the Government dismissed the fourth count,[1] and at the conclusion of the trial the jury returned a verdict finding defendant guilty under the remaining counts. Subsequently he received three 2-year concurrent sentences. Since the defendant does not challenge the sufficiency of the evidence, only a capsule version of the case facts need be given.

The Government showed that a Molotov cocktail bomb was thrown against a door of the Naegele Outdoor Advertising Company's building in Indianapolis, Indiana, at 5:30 on the morning of May 11, 1976. Circumstantial evidence pointed to defendant as the culprit.

I

The defendant does not assail Count II of the indictment, which charged him with

1. On August 20, 1976, defendant's "Motion to Require the District Attorney to Elect and Defendant's Conditional Alternative Combined Motions for a Partial Bill of Particulars and for a Conditional Extension of Time in Which to Move for Dismissal of the Indictment" was filed. This motion asserted Counts I, III and IV were identical and that the Government should be forced to elect to prosecute under one and only one of these counts. Defendant also asked for a bill of particulars to ascertain whether all the counts spoke of one and the same explosive, as well as for ten days after the filing of the bill to file a motion to dismiss two of the three identical counts. On October 5, 1976, the Government responded by conceding "the explosive referred to in each count of the indictment refers to a single explosive * * *" but asked that the defendant's motion be denied in all other respects. Subsequently, on October 7, 1976, the district judge denied defendant's motion.

knowingly possessing an unregistered firearm[2] in violation of 26 U.S.C. § 5861(d). However, he asserts that the indictment is multiplicitous in that Counts I and III charge only one offense and consequently put him in double jeopardy.

Count I charged that on May 11, 1976, Chaney maliciously attempted to destroy Naegele Outdoor Advertising Company's structure by means of an explosive and that Naegele was a business affecting interstate commerce. This act was said to violate 18 U.S.C. § 844(i), which makes it unlawful to "maliciously [attempt] to damage or destroy, by means of an explosive, any building * * * used * * * in any activity affecting interstate * * * commerce." Count III charged that on the same date, defendant knowingly used an explosive to commit a felony prosecutable in a court of the United States, "that is, a malicious attempt to damage and destroy with an explosive material a structure used in a business affecting interstate commerce, contrary to Title 18, United States Code, Section 844(i), in violation of Title 18, United States Code, Section 844(h)(1)." The latter Section makes it a crime to use "an explosive to commit any felony which may be prosecuted in a court of the United States * * *." In answering defendant's motion for a bill of particulars, the Government conceded that only one explosive was alleged to have been used on the date in question. See note 1 *supra.*

■ A comparison of Counts I and III shows that the charges in both counts are identical, apart from the fact that Count I alleges a violation of 18 U.S.C. § 844(i) and Count III a violation of 18 U.S.C. § 844(h)(1). The Government's answer to defendant's motion to dismiss admitted that only one basic incident was involved and, as already twice noted, the Government also admitted that the explosive in each count referred to a single explosive. Therefore, the evidence necessary to prove the offense charged under Count I would prove the offense charged under Count III, and vice versa. *Brown v. Ohio,* —— U.S. ——, ——, 97 S.Ct. 2221, 53 L.Ed.2d 187, recently reiterated that the test to be applied to determine whether the double jeopardy clause of the Fifth Amendment applies or not "is whether each [statutory] provision requires proof of a fact which the other does not." As in *Brown,* Counts I and III of this indictment constitute "the same offense" within the meaning of the double jeopardy clause because they would be proved by identical evidence. Therefore, defendant's motion to dismiss Count III of the indictment should have been granted. His counsel urges that in contradistinction to *United States v. Tanner,* 471 F.2d 128, 142 (7th Cir. 1972), certiorari denied, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 reversal of the conviction imposing a concurrent sentence under invalid Count III would be insufficient here because the jury could easily have been prejudiced by the Government's inflated view of defendant's wrongdoing caused by including that Count. Cf. *McFarland v. Pickett,* 469 F.2d 1277, 1279 (7th Cir. 1972). That question need not be resolved because a new trial is being ordered on another ground (see Part III *infra*).

## II

■ Defendant also argues that under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the Government should have disclosed prior to trial that on the day preceding the bombing, the Naegele Outdoor Advertising Company received two threatening telephone calls. On this day, the Company had been struck and its union employees commenced picketing of the premises. Defendant was not a member of the striking union nor an employee of the Company although he had been employed at the same building by Naegele's predecessor nineteen years earlier. At 11:30 a. m., the caller threatened to "whip" the receptionist who answered the phone, and at 4:30 p. m., the caller threatened a bomb explosion in

---

**2.** The definition of "firearm" includes "a destructive device" such as an explosive (26 U.S.C. § 5845(a) and (f)).

the Naegele building at 6:00 o'clock (whether A. M. or P. M. was ambiguous). Because Naegele had brought in out-of-state supervisory personnel to carry on the work of the striking employees, defendant maintains that the bombing could have been perpetrated by union members angered by Naegele's use of strike breakers. In response, the Government submits that these phone calls were inculpatory since the portion of the building which was bombed was the same as the caller claimed would be bombed. They were offered in evidence on the theory that defendant made them (Tr. 203–210). When these telephone calls were received in evidence over defendant's objection, it was not too late for defendant to attempt to show a dissimilarity between his voice and the voice of the caller. Indeed, by objecting to the evidence, defendant recognized its inculpatory nature, making *Brady* inapplicable. 373 U.S. at 87, 83 S.Ct. 1194; see also *Weatherford v. Bursey,* 429 U.S. 545, 559–561, 97 S.Ct. 837, 51 L.Ed.2d 30. In any case, in the absence of any argument as to the sufficiency of the evidence, defendant has failed to show any prejudice from the failure to make the testimony available to him at an earlier time, so that no *Brady* error was committed. *United States v. Stone,* 471 F.2d 170, 173–174 (7th Cir. 1972), certiorari denied, 411 U.S. 931, 93 S.Ct. 1898, 36 L.Ed.2d 391.[3]

### III

The jury heard evidence in this case for four days and heard approximately two hours of closing argument before retiring. It commenced deliberations at 5:15 p. m. on October 18, 1976. After it had deliberated approximately seven hours (with two hours' time out for dinner), the district judge called the jury back at 12:20 a. m. on October 19 and gave a supplemental instruction. According to defendant's trial counsel, twenty minutes prior to the giving of the supplemental instruction, counsel for both parties were called into chambers where the judge asked defense counsel if he thought the possibly hung jury should continue on with its deliberations or be bedded down for the night.[4] He informed the judge that he thought the jurors should retire for the night (Reply Br. 4.)[5] Nevertheless, when the judge returned to the bench, he gave the jurors the following instruction at 12:20 a. m.:

"The Court: Members of the jury. In view of the hour the Court is going to present to the jury two envelopes. One marked 'Sealed Verdict,' the other-marked 'Unused Forms' with the instruction that the jury continue its deliberation and if the jury is able to arrive at a verdict to enclose the verdict, the executed verdict, in the envelope marked 'Sealed Verdict' and the unused forms in the envelope marked 'Unused Forms.' The foreman will be instructed, or the forewoman, to carry the sealed verdict on his or her person until tomorrow morning, if you arrive at a verdict. *If you do not arrive at a verdict then the jury will be brought into the court tomorrow morning at 9:30 and the Court will then determine what course should be taken.*

*"I might say the hours I am required to spend and the other attaches of the Court we are going to let the jury continue on with these instructions.*

"So, with that the jury may continue on. I have told the Marshal that arrangements can be made to take you to a place for coffee or midnight dinner whatever the jury might desire in that regard.

"We will stand adjourned." (Emphasis supplied.)

The jury then continued its deliberations another six hours (apart from a 90-minute midnight snack) and reached a verdict at 6:30 a. m., returning to court about 9:45 a. m. to announce it. In sum, the jury was in deliberation for nine hours and nine min-

---

3. Then Chief Judge Swygert's dissent in *Stone* did not involve this point.

4. Defense counsel also claims that at the *in camera* conference on final jury instructions the trial judge had previously expressed concern that the jury might hang (Reply Br. 4).

5. At the oral argument, Government counsel stated that he did not recall this specific colloquy but did remember "a general discussion" in the judge's chambers.

utes. The jurors evidenced no indications of fatigue to the marshal nor did they request additional instructions.

■■ Defendant contends that because the trial judge thought the jury "might hang" (Rely Br. 4), the underscored portion of the supplemental instruction was in the nature of an *Allen* charge,[6] which we condemned in *United States v. Brown,* 411 F.2d 930 (7th Cir. 1969), and in *United States v. Silvern,* 484 F.2d 879 (7th Cir. 1973) (*en banc*), as impeding a defendant's right to trial by an impartial jury and to due process. Acting under this Court's supervisory power rather than as a constitutional imperative, *Brown* and *Silvern* required trial judges in this Circuit not to depart from a prescribed supplemental instruction. In *Silvern* we held *en banc* that in jury trials thirty days thereafter, such a departure would result in reversal and remand (484 F.2d at 883). Because the present charge does not harmonize with the exemplar, a new trial is warranted.

■ In effect, these jurors could have understood the supplemental charge as meaning that they must reach a verdict to avoid being locked up until 9:30 a. m. In addition, they could have understood the judge to mean that he was too busy to try the case again, so that they must deliberate until reaching a verdict. The supplemental instruction could also be understood as meaning that even though the jurors deliberated until 9:30 a. m., the court might require them to continue deliberating thereafter even though they had been without sleep since the preceding morning. Therefore, this innocently intended instruction cannot pass muster. *Burroughs v. United States,* 365 F.2d 431, 433–434 (10th Cir. 1966). However, to avoid reversal, the Government argues that defendant should have made an objection to this charge. First of all, it appears that an objection was made by defense counsel in chambers at midnight and no opportunity for further objection was given at the close of the

supplemental instruction. When court reconvened at 9:40 a. m. and before the jurors returned with their verdict, defense counsel moved unsuccessfully for a mistrial because the supplemental charge "clubbed the jury into a verdict" (Tr. 684–686). A week later he filed a motion to interrogate the jurors as to the coercive effect of the supplemental instruction. This motion was denied by order of November 2. Even if defense counsel had not preserved this error by his midnight statement in chambers, by his motion for a mistrial and by his motion to interrogate the jurors, we would consider the matter under the plain error rule of Rule 52(b), Federal Rules of Criminal Procedure. See *Government of Virgin Islands v. Hernandez,* 476 F.2d 791, 793 (3d Cir. 1973); *Burroughs v. United States, supra* at 434; *Jenkins v. United States,* 117 U.S.App. D.C. 346, 330 F.2d 220 (1964).

For the foregoing reasons, the judgment of the district court is vacated and the cause is remanded for a new trial under Counts I and II.

---

**6.** *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. Many cases condemning an *Allen* charge are collected in *United States v. Bailey,* 468 F.2d 652, 665–668 (5th Cir. 1972). The *Allen* instruction is designed to wrest a

verdict from a potentially hung jury. Supplemental instructions of this nature are disfavored because of their potentially coercive effect on jury deliberations. *United States v. Silvern,* 484 F.2d 879 (7th Cir. 1973) (*en banc*).