Hector ORTIZ

v.

**Jack R. DUCKWORTH.**

No. S 79–227.

United States District Court, N. D. Indiana, South Bend Division.

Jan. 14, 1980.

J. Richard Kiefer, Indianapolis, Ind., Anthony V. Luber, South Bend, Ind., for petitioner.

Theodore L. Sendak, Atty. Gen. of Ind., Indianapolis, Ind., for respondent.

## MEMORANDUM AND OPINION

ALLEN SHARP, District Judge.

The petitioner, Hector Ortiz, is a state prisoner who is presently incarcerated at the Indiana State Prison pursuant to a state court conviction for first degree murder. This action is brought under the federal habeas corpus statute, 28 U.S.C. 2254. He appealed his state conviction to the Supreme Court of Indiana which affirmed his conviction in a published opinion in *Ortiz v. State*, 265 Ind. 549, 356 N.E.2d 1188 (1976).

Counsel for both plaintiff and defendant have fully briefed the issue here presented which has been most helpful. Oral argument was heard while the Court was conducting trials at the Indiana State Prison on December 28, 1979.

### I

The entire state transcript has been filed here and carefully examined.

This case raises a single issue here.

The facts in the record appear at pages 390–395 and are stated as follows:

THE FOLLOWING WAS HELD AT 1:55 A.M.

THE FOLLOWING WAS HELD OUTSIDE THE PRESENCE OF THE JURY.

BY THE COURT: It is five (5) minutes to two (2) and the jury has not signaled a verdict yet. I am going to call them in and interrogate them as to the situation they are in. Summon the jury.

AT THIS TIME THE JURY ENTERS THE JURY BOX.

BY THE COURT: Ladies and Gentlemen of the jury, have you reached a verdict? Mr. Manslauj are you the foreman?

A    Yes, sir no.

BY THE COURT: Do all of you understand that this case is going to have to be decided and that if you do not reach a verdict the case will have to be re-tried do you understand that, and that you have all taken an oath that you will well and truly try the case before you. I have sent in the instructions have you any difficulty with that?

A    No.

BY THE COURT: I am certain that with enough deliberations that you will be able to reach a verdict. You should if you have any messages to send to your families you should write them on sheets of paper and hand them to the bailiffs. You will be sequestered until further notice. Now you may return to the jury room and deliberate upon a verdict.

AT THIS TIME THE JURY LEAVES TO DELIBERATE.

THE FOLLOWING WAS HELD OUTSIDE THE PRESENCE OF THE JURY.

BY THE COURT: Once the jury has received the case they can be separated that is unsequestered only with the consent of the parties, do the parties consent to separation of the jurors?

BY MR. REARDON: I don't understand what the court means.

BY THE COURT: Send them home for the night and bring them back for deliberations tomorrow morning at ten (10).

BY MR. REARDON: I would have to think about that at least for a short period of time before making an answer.

BY THE COURT: Alright, let me know your decision.

THE FOLLOWING WAS HELD AT 5:30 A.M.

THE FOLLOWING WAS HELD IN THE PRESENCE OF THE JURY.

BY THE COURT: Ladies and Gentlemen of the jury, have you reached a verdict?

A    Yes, your honor we have.

BY THE COURT: Mr. Pigott could you hand your verdict form to the bailiff? The defendant will stand. "State of Indiana v. BRUCE TYRONE WILLIAMS, Verdict We the jury find the defendant BRUCE TYRONE WILLIAMS to be guilty of Murder in the First Degree and that he shall be imprisoned in the state prison during life." "State of Indiana v. HECTOR ORTIZ, Verdict We the jury find the defendant HECTOR ORTIZ to be guilty of Murder in the First Degree and that he shall be imprisoned in the state prison during life." Those verdict forms, both verdict forms are signed John C. Pigott Jr. Foreman. You may be seated. Does counsel wish to poll the jury?

BY MR. GRADDICK: Yes.

BY THE COURT: You may do so.

BY MR. GRADDICK: Juror No: 1 is that your verdict?

A    Yes, sir.

Q    Juror No: 2?

A    Yes.

Q    Juror No: 3?

A    Yes.

Q    Juror No: 4?

A    Yes.

Q    Juror No: 5?

A    Yes.

Q    Juror No: 6?

A    Yes.

Q    Juror No: 7?

A    Yes.

Q    Juror No: 8?

A    Yes.

Q    Juror No: 9?

A    Yes.

Q    Juror No: 10?

A    Yes.

Q    Juror No: 11?

A    Yes.

Q    Juror No: 12?

A    Yes.

BY THE COURT: Does counsel have anything to say to the jury before they are discharged? You are now discharged with the thanks of the court for a most difficult decision. Because there is only one (1) trial going next week you are excused from further services until the following week which makes it January 19th. Until then you are discharged. Everyone will stand. The courtroom will be sealed until the jury has left the building.

THE FOLLOWING WAS HELD OUTSIDE THE PRESENCE OF THE JURY.

BY THE COURT: A pre-sentence investigation report is now ordered for sentencing on the 22nd day of January, 1976 at 8:00 A.M. Til then the defendant and each of them are remanded to the custody of the Lake County Sheriff. No bond.

## II

The question is whether or not the above statement made to a jury after some ten hours of deliberation by a state court criminal trial judge is so coercive as to be a violation of the due process right of this petitioner under the Fourteenth Amendment to the Constitution of the United States including the incorporated rights therein.

Under the law of Indiana the above instruction during jury deliberations would not be considered coercive and would not, of itself, cause a reversal. Instructions much stronger than this have been recently upheld in Indiana. For example see *Guffey v. State*, Ind.App., 386 N.E.2d 692 (1979) (transfer denied June 30, 1979). The careful and comprehensive opinion of Judge Robertson there is strong support for the reasoning and result announced here.

If this were a direct appeal from a conviction in a United States District Court, this Court of Appeals would probably reverse this conviction under the holding in *United States v. Chaney*, 559 F.2d 1094 (7th Cir. 1977). In the *Chaney* case a United States District Judge with over a quarter of a century experience told the jury there at approximately 12:20 A.M. after the jury had deliberated approximately seven hours with time out for dinner.

"The Court: Members of the jury. In view of the hour the Court is going to present to the jury two envelopes. One marked "Sealed Verdict," the other marked "Unused Forms" with the instruction that the jury continue its deliberation and if the jury is able to arrive at a verdict to enclose the verdict, the executed verdict, in the envelope marked "Sealed Verdict" and the unused forms in the envelope marked "Unused Forms." The foreman will be instructed, or the forewoman, to carry the sealed verdict on his or her person until tomorrow morning, if you arrive at a verdict. *If you do not arrive at a verdict then the jury will be brought into the court tomorrow morning at 9:30 and the Court will then determine what course should be taken.*

*"I might say the hours I am required to spend and the other attaches of the Court we are going to let the jury continue on with these instructions.*

"So, with that the jury may continue on. I have told the Marshal that arrangements can be made to take you to a place for coffee or midnight dinner whatever the jury might desire in that regard.

"We will stand adjourned."

(emphasis in opinion)

In *Chaney* the district judge, sua sponte, called the jury as aforesaid indicated. Also, if this were a direct appeal the supplemental instructions given by the state trial judge would probably not pass muster. See *United States v. Brown*, 411 F.2d 930 (7th Cir. 1969); and *United States v. Silvern*, 484 F.2d 879 (7th Cir. 1973).

The key to this case is whether or not the teaching of *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965), is applicable fully to state criminal

jury trial. Even assuming full application there is a second issue which must be dealt with and that is the issue of waiver.

An examination into the record of *Jenkins v. United States* is helpful. That case was tried in the United States District Court for the District of Columbia by Judge Alexander Holtzoff, a long time district judge and a recognized authority on federal practice and procedure. In the case, after approximately two hours of deliberation, the district judge received a note indicating a deadlocked jury. In the opinion of the Court of Appeals in the District of Columbia found at 330 F.2d 220 (1964), this added comment appears.

> "Significantly, the appellant did not object at the time and protests for the first time on appeal."

The complete instruction given by Judge Holtzoff was as follows:

> "The Court: Mr. Foreman, the Court has received your note reading as follows:
> " 'The jury cannot come to a decision on both counts because of insufficient evidence.'
> "Well, you have all the evidence there is, all the evidence that anybody can have. That is what we have jurors for, to decide on the evidence. If there weren't any problems we wouldn't have a jury.
> "Now, I am not going to accept this. You have got to reach a decision in this case.
> "You may resume your seat, Mr. Foreman.
> "Of course, every case involves a problem and you have got to weigh the evidence and reach a conclusion. That is what you are jurors for.
> "Now, I am going to let you go home at this time. Each of you think it over overnight and I am going to ask you to be back here by 10 o'clock tomorrow morning and resume your deliberations. Now, from the moment you leave the jury box until you return tomorrow morning at 10 o'clock to resume your deliberations, please don't discuss this case with anyone, not even amongst yourselves, not even at home with members of your families.

> Each of you can individually think about it, but don't discuss it and don't let anybody talk to you about it. Perhaps after you have had a good rest overnight you will be in a position to reach a verdict.
> "It is a simple case. We have cases that are much harder than this one that juries decide. As I say, if cases were open and shut we wouldn't need any juries.
> "I am going to excuse at you at this time and please be back in the jury room a few minutes before 10 o'clock tomorrow morning and then resume your deliberations because this case has to be decided. That is all the evidence there is, that is all the evidence anybody can have. If I excuse you we have to try the case again with some other jury and they will have the same evidence. Now that would not be very sensible, would it. So, you will be excused at this time, ladies and gentlemen of the jury. I know that you will reach a decision tomorrow after you think about it overnight."

The Court of Appeals for the District of Columbia by a panel including Judge Miller, Judge (now Chief Justice) Burger and Judge J. Skelley Wright affirmed the conviction with Judge Wright writing a strong dissent. The Supreme Court of the United States reversed in a brief per curiam opinion in which Justices Clark and Harlan dissented without opinion. The Court briefly concluded, "Upon review of the record we conclude that in its context and under all the circumstances the judge's statement had the coercive effect attributed to it." Implicit in the ruling of the Supreme Court in *Jenkins* was the ineffectiveness of the waiver argument on failure to object in the district court. More recently, *Jenkins* has been followed and adhered to. In *United States v. United States Gypsum Co.*, 434 U.S. 815, 98 S.Ct. 2864, 54 L.Ed.2d 71 (1978), Court stated:

> "In *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965), we held an instruction directing the jury that it had to reach a verdict was reversible error; the logic of *Jenkins* cannot be said inapposite here given the peculiar

circumstances in which discussions between the judge and foreman took place." 98 S.Ct. 2886 (emphasis in opinion)

*Jenkins* on its face is the appeal of a federal criminal conviction and arguably involves the Supreme Court of the United States in its supervisory power over federal court procedure. The Supreme Court did not explicitly enunciate in *Jenkins* whether or not it is dealing with basic constitutional rights. It is beyond question that *Jenkins* fully applies to criminal convictions obtained in a United States District Court. The question still undecided in this circuit, at least, is whether the values that are implicit in *Jenkins* are fully applicable in state criminal proceedings under review in a United States District Court pursuant to 28 U.S.C. § 2254. The Court of Appeals for this Circuit has explicitly reserved the question on two recent occasions. First, in *United States ex rel. Anthony v. Sielaff*, 552 F.2d 588 (7th Cir. 1977), see footnote 1 and *United States ex rel. Latimore v. Sielaff*, 561 F.2d 691 (7th Cir. 1977), see footnote 7.

The reported decisions in the habeas corpus context are not unanimous on the subject. In *Graham v. Harris*, 452 F.Supp. 137 (S.D.N.Y.1978), the court concluded:

"Finally, no error of constitutional magnitude stems from the mere fact that a form of the *Allen*, [*Allen v. U. S.*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528] charge was given twice. Without regard to the number of times the charge is given, the test is whether the instructions to the jury were coercive under all the circumstances, a test which, we have concluded, was not violated here. See *Marsh v. Cupp, supra*, 536 F.2d [1287] at 1289–92 (upholding use of two *Allen* charges under *Jenkins'* 'totality of circumstances' test). It matters not that certain state and federal appellate courts, pursuant to their supervisory powers, banned the use of multiple *Allen* charges in prosecutions within their jurisdictions. See, e. g. *United States v. Seawell*, 550 F.2d 1159, 1162 & n. 4 (9th Cir. 1977) (citing cases). We do not agree with those decisions, but, in any event, they were not based on the constitution, which, of course, is the only applicable legal source in this habeas corpus proceeding. See *United States v. Seawell, supra*, 550 F.2d at 1163 n. 9." (footnote omitted)

Although in a slightly different factual context, one might read *United States ex rel. Tobe v. Bensinger*, 352 F.Supp. 218 (N.D.Ill. 1972), as treating *Jenkins* and its progeny as the statement of constitutional rights. A different result appears in *Ralls v. Manson*, 375 F.Supp. 1271 (D.Conn.1974). The elaborate discussion of the issue by Judge Blumenfeld begins at page 1292 and concludes at 1298. His summary of much of the judicial happenings since *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), is highly informative and need not be repeated here. The statement of Judge Blumenfeld at 1296 is helpful. He said:

"In the instant case, the trial judge's supplemental instructions compounded manipulation with misdirection, all to the undoubted prejudice of the defendant. The trial judge's statement in his first supplemental instruction, 'I cannot allow you to leave before I have some sort of verdict,' can only be seen as the kind of command to the jury so summarily condemned by the Supreme Court in *Jenkins*. The pronouncement that a declaration of a mistrial was inconceivable, that it 'would be an impossibility,' was a clearly erroneous statement of the law.

"The trial judge gave his second supplemental instruction without having received any communication from the jury that it was unable to agree. The language of the instruction was not the language of the *Allen* charge. The instruction, in effect, paid lip service to the proposition that each juror should follow his own convictions, in the only portion of the instruction which tracked the language of *State v. Smith*, then laid strong emphasis on the desirability of jurors reexamining their own views in light of the conclusions reached by the others. Although the instruction did not in terms urge those jurors in the minority to give careful consideration to the views of the

majority, that point was undoubtedly clear from the circumstances and the context of the judge's admonition. The directive to "Follow that theory, that you will resolve yourselves *to do your duty and follow the thoughts of other jurors* whom, I am sure, are equally as wise and have heard the same evidence.' (emphasis added), was unquestionably an injunction to the jurors in the minority to 'follow,' as a matter of 'duty,' the conclusions of the majority, whatever they might be. The trial judge gave no mitigating instruction assuring the jurors in the minority that they were not to yield their conscientious convictions: indeed, the thrust of the total instruction was that the jurors in the minority *should* yield their own views in favor of those of the majority. The impact of the judge's earlier promise to keep the jurors there until they reached a verdict could not have been lost on the recalcitrant members of the jury. The supplemental instructions in the instant case were no 'dynamite charge,' designed to blast the jury off dead center: they were more like a nuclear detonation, annihilating the dissenters completely. These instructions, erroneous in their substance and coercive in their effect, denied the petitioner a fair trial and therefore deprived him of a right guaranteed by the Constitution." (emphasis in opinion)

The decision of Judge Blumenfeld was reversed on appeal. See 503 F.2d 491 (2d Cir. 1974). The concurring opinion of Judge Lumbard is most instructive. At page 498 he stated:

"The district court concluded that these supplemental instructions by the trial judge unconstitutionally compelled jurors voting for a minority position to acquiesce in the majority's position. The court first focused on the 5:00 p. m. statement where the judge told the jury that they had to reach a verdict. The court relied on the Supreme Court's brief opinion in *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965), where a conviction was reversed on the ground that the district judge coerced a jury by telling them that they had to reach a verdict. But it should be noted once again that *Jenkins* was a case concerning a federal appellate court supervising the lower courts. Furthermore, the district judge had initially told the jury that the case was a simple one and should not detain them long. After two hours the jury sent back a note saying that it was hopelessly deadlocked. The district judge then said that he was not going to accept that and that the jury had to reach a decision. *Jenkins v. United States*, 117 U.S.App.D.C. 346, 330 F.2d 220, 221 & n. 2 (1964) (Wright J., dissenting)."

\* \* \* \* \* \*

"In conclusion, such a charge seems to me to be well within the province of the state courts to pass upon in accordance with state practice in situations where the jury seems unable to agree. As the states may provide for convictions in criminal cases by less than unanimous verdict, *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972); *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), it would seem to follow that the means whereby unanimity is reached, including such a matter as a supplemental charge, is not to be judged by the standards which we apply in federal criminal trials where unanimity is a constitutional requirement. Thus the district judge was treading on territory which is better left for decision by our brethren of the state courts."

The pull and tug involved with this issue is again reflected in *Marsh v. Cupp*, 392 F.Supp. 1060 (D.Or.1975), which was a state habeas corpus proceeding under 28 U.S.C. § 2254 in which the United States Magistrate following *Jenkins* recommended the granting of the writ. Chief Judge Belloni declined and, upon review, stated:

"The trial judge, prior to giving the second *Allen* charge, inquired as to the numerical split of the jury. The United States Supreme Court, as well as the Ninth Circuit, has criticized this practice.

*Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926); *Spaugh v. United States*, 77 F.2d 720 (9th Cir. 1935). Both of these decisions, however, were based on the court's *supervisory powers* and not on constitutional interpretation. Therefore, neither *Brasfield* nor *Spaugh* control in this Habeas Corpus proceeding."

It may be noteworthy that Chief Judge Belloni omitted *Jenkins* from his list of cases in which the Supreme Court and the Ninth Circuit were exercising "supervisory powers". Nonetheless the result in *Marsh v. Cupp* is clear that *Jenkins* was not given full-blown application to state court criminal proceedings in the United States District Court under 28 U.S.C. § 2254.

In *Jones v. Norvell*, 472 F.2d 1185 (6th Cir. 1973), the court said:

"The court believes that the facts recited above involved the invasion of jury secrecy (*See Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965)), the identification of a deadlocked jury's majority-minority count (See *Brasfield v. United States*, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926)), a coercive jury charge (See e. g., *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965)) and the speedy return of a verdict subsequent to the charge (See e. g. *United States v. Rogers*, 289 F.2d 433, 436–437 (4th Cir. 1961)). These facts constitute a totality of circumstances which violate the constitutional rights of appellants to a fair and impartial jury trial under the Sixth and Fourteenth Amendments."

Another example of the pull and tug involved in applying *Jenkins* to state court criminal proceedings is evident in *Ellis v. Reed*, 596 F.2d 1195 (4th Cir. 1979), when one examines the majority opinion written by Judge Walter E. Hoffman with the dissenting opinion of Judge Winter beginning at page 1201. Judge Hoffman very appealingly invoked the concerns for federalism expressed by Justice Harlan in *Duncan v.*

*Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1892, 26 L.Ed.2d 446 (1970), wherein Justice Harlan warned that the court was creating a constitutional straightjacket for the states and doing great harm to the federal system. Judge Hoffman also quoted the statement of Mr. Justice Frankfurter in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), in which he warned that due process should not be turned into a destructive dogma against the state in the administration of their systems of criminal justice.

The record in this case involves a close call. If the teaching of *Jenkins, Chaney, Brown* and *Silvern* are to be made fully applicable to state court criminal proceedings, then clearly the writ must be granted notwithstanding the state court record shows that the proof of guilt beyond a reasonable doubt was established to satisfy the standard announced in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) teaches that there is some state criminal procedural leeway available consistent with the Fourteenth Amendment. Concurring, Mr. Justice Harlan at 399 U.S. at 130–133, 90 S.Ct. at 1921–1923 stated:

"I reiterate what I said in dissent in *Duncan*, 391 U.S. 145, at 175–176, 88 S.Ct. 1444, at 1463: '[N]either history, nor sense, supports using the Fourteenth Amendment to put the States in a constitutional straitjacket with respect to their own development in the administration of criminal or civil law.' Since we now witness the first major attempt to wriggle free of that 'straitjacket,' it is appropriate, I think, to step back and view in perspective how far the incorporation doctrine has taken us, and to put the spotlight on a constitutional revolution that has inevitably become obscured by the process of case-by-case adjudication."

\* \* \* \* \* \*

"There is no need to travel again over terrain trod in earlier opinions in which I

have endeavored to lay bare the historical and logical infirmities of this 'incorporationist' approach. On that score, I am content to rest on what I said in dissent in *Duncan*, 391 U.S. 145, at 171, 88 S.Ct. 1444, at 1460. I continue to consider the principles therein expressed as the sound basis for approaching the adjudication of state cases of the kind now before us. It is my firm conviction that 'incorporation' distorts the 'essentially federal nature of our national government,' *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 285, 90 S.Ct. 1739, at 1742, 26 L.Ed.2d 234 (1970), one of whose basic virtues is to leave ample room for governmental and social experimentation in a society as diverse as ours, and which also reflects the view of the Framers that 'the security of liberty in America rested primarily upon the dispersion of governmental power across a federal system,' 391 U.S. at 173, 88 S.Ct. at 1461. The Fourteenth Amendment tempered this basic philosophy but did not unstitch the basic federalist pattern woven into our constitutional fabric. The structure of our Government still embodies a philosophy that presupposes the diversity that engendered the federalist system."

## III

There is no doubt as a general rule in a habeas corpus action a federal court ordinarily should accept the factual determinations of the state court where the record shows that the state proceedings are full and fair. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and *United States ex rel. Harris v. State of Illinois*, 457 F.2d 191 (7th Cir. 1972). The burden is on the petitioner to show that the state proceedings were not full and fair. See *Howard v. Maggio*, 540 F.2d 1280 (5th Cir. 1976), and *Velleca v. Superintendent M.C.I., Walpole*, 523 F.2d 1040 (1st Cir. 1975). If *Jenkins* represents the Supreme Court of the United States acting in its supervisory capacity over the federal judiciary and not enunciating fundamental Sixth and Fourteenth Amendment values, then

the waiver determination of the Supreme Court of Indiana would have to be considered carefully. If *Jenkins* does not announce a fundamental constitutional rule, then the legal determination of the Indiana Supreme Court that the petitioner waived the alleged coercive instruction may be binding on this court and may preclude further consideration of the issue in this habeas corpus proceeding. The finding of the Indiana Supreme Court may constitute a state procedural waiver that bars federal habeas corpus review even if the petitioner's claim had constitutional implications absent a showing of cause by the petitioner for his failure to make timely objection and to show actual prejudice. See *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Blenski v. LaFollette*, 581 F.2d 126 (7th Cir. 1978); and *United States ex rel. Maxey v. Morris*, 591 F.2d 386 (7th Cir. 1979). In *Blenski v. LaFollette*, the Court of Appeals for this Circuit said:

"The issue of reviewability of a federal claim which the state declined to pass upon was considered by the Court in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In *Sykes* the federal claim of admission of inculpatory statements obtained in violation of rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), had not been resolved on the merits in the state proceeding because the claim had not been presented in the manner prescribed by state procedural rules: no contemporaneous objection had been made. The Court noted that many interests are served by a contemporaneous objection rule, 433 U.S. at 88–89, 97 S.Ct. 2497, and stated that "[a]ny procedural rule which encourages the result that [a criminal trial] be as free of error as possible is thoroughly desirable . . . ." *Id.* at 90, 97 S.Ct. at 2508. The Court therefore held that absent a showing of "cause" and "prejudice" attendant to the failure to make timely objection, federal habeas review is unavailable.

We find the reasoning of *Sykes* equally persuasive in a federal habeas challenge to jury instructions which were not objected to in a timely manner. A decision on the issue of the constitutionality of jury instructions also should have the benefit of full consideration at the trial court level. Wisconsin law is clear: The failure to make timely objection to jury instructions constitutes a waiver of any alleged defects in those instructions. *State v. Davis,* 66 Wis.2d 636, 225 N.W.2d 505 (1975). Thus, unless a petitioner established "cause" for his failure to object timely and that he was "actually prejudiced" by use of the instructions, he is not entitled to habeas relief." 581 F.2d at 129–130.

Federal habeas corpus relief is available to a state prisoner only when a showing by clear and convincing evidence that he was denied federal constitutional rights in state proceedings resulting in conviction. See *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The reasoning and result in *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1973), and *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), might be used as an argument for the non-application of *Jenkins* to state court criminal proceedings. (The concurring opinion of the Chief Justice in *Henderson v. Kibbe* at 97 S.Ct. 1738 would support the kind of waiver analysis that is made by the Supreme Court of Indiana in this case.) There is one other aspect of the Indiana Supreme Court's waiver analysis that this court finds appealing. From the bare record it might be argued that the state trial judge did not give defense counsel adequate warning or notice of the contents of his instructive remarks to the jury *before* they were given. However, there was a most adequate opportunity for the same defense counsel to object to the instruction after they were given and to move for a mistrial. This court cannot rule out the strong possibility that trial counsel for Hector Ortiz adopted a deliberate strategy not to object and not to move for a mistrial.

The record also reflects that the state trial judge offered counsel an opportunity to consent to the separation of the jury until 10:00 A.M. the following day. This offer was not accepted by counsel for Ortiz although it was under consideration for several hours.

United States district judges who exercise review of state court criminal convictions under 28 U.S.C. § 2254 must approach these reviews with restraint. These reviews must be limited to clearly defined constitutional issues. District judges in particular and the federal judiciary in general should be very wary lest the judges of the federal judiciary attempt to impose their ideas as to what is best in the criminal procedural area upon the states. Absent clear constitutional mandate such imposition of federal judicial notions as to what is best could work the kind of a perversion of basic ideas of federalism that were long and brilliantly spoken for by Mr. Justice Harlan and others as indicated elsewhere in this memorandum. In the same vein district judges should not be hesitant to act in granting writs of habeas corpus where there have been clearly defined violation of fundamental constitutional guarantees. The Supreme Court of the United States has yet to explicitly apply the ruling in *Jenkins* to the states under the Fourteenth Amendment of the Constitution of the United States. The Court of Appeals for this circuit has now twice reserved such question and has left it open. This court is not here ready to give *Jenkins* full-blown application to state court criminal proceedings in this case. Even if such were done there is a very strong argument in this case for an intentional waiver since trial counsel for Ortiz chose not to make any record on the subject whatsoever.

At this time there is no explicitly clear authority mandating the grant of this writ. This case may well be used as a vehicle for the federal appellate courts to review and clarify this very difficult area. On the basis of the present state of the law and for the reasons here announced this court does now respectfully decline to grant the requested writ. Writ DENIED.