**Hector ORTIZ, Petitioner-Appellant,**

v.

**Jack R. DUCKWORTH,
Respondent-Appellee.**

**No. 80–1143.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1980.

Decided Oct. 28, 1982.

J. Richard Kiefer, Indianapolis, Ind., for petitioner-appellant.

David L. Steiner, Deputy Atty. Gen., Indianapolis, Ind., for respondent-appellee.

Before SWYGERT and FAIRCHILD, Senior Circuit Judges, and CAMPBELL,* Senior District Judge.

FAIRCHILD, *Senior Circuit Judge.*

This is an appeal from a denial of a writ of *habeas corpus.* Petitioner is in custody as a result of his conviction and sentence in an Indiana court. His sole claim is that the trial judge gave a coercive charge to the jury at 1:55 a.m. after approximately ten hours of deliberation. The relevant portion of the transcript is set out in the decision of the district court, *Ortiz v. Duckworth,* 482 F.Supp. 1083, 1084–86 (N.D.Ind.1980).

The Supreme Court of Indiana affirmed. *Ortiz v. State,* 265 Ind. 549, 356 N.E.2d 1188 (1976). In response to the claim of a coercive charge, the Court said:

> Appellants argue that this was an improper "coercive charge," which interfered with the free and independent deliberation of the jury. However, the record

* Senior District Judge William J. Campbell of the Northern District of Illinois sitting by desig-

nation.

shows no objections by appellants to the recalling of the jury or to the court's remarks to them, either before, during or after the episode, although both appellants were present with counsel. Absent an objection to an alleged error at trial, no issue is preserved for this Court to consider. *Hardin v. State,* (1970) 254 Ind. 56, 257 N.E.2d 671.

We recognize that the trial court's comments were not delivered as a formal instruction, and that appellants may not have had advance notice of the substance of the remarks the court intended to address to the jury. We think the better practice, whenever the trial court finds it appropriate to address the jury after the deliberations have commenced, would be to inform all counsel of the comments to be made to the jury, and to so indicate on the record. This might best be done by preparing any such comments as a formal written instruction. Such a practice would allow any objections to be made before the jury is recalled, so as to afford the court maximum opportunity to avoid any harmful error.

However, the failure of the trial court to do so here does not excuse appellants from the necessity of objecting when they became aware of the trial court's remarks.

265 Ind. at 565–66, 356 N.E.2d at 1197–98.

The rule requiring an objection is well established in Indiana. *Hensley v. State,* 251 Ind. 633, 639, 244 N.E.2d 225, 228 (1969), *Seisler v. Smith,* 150 Ind. 88, 92, 46 N.E. 993, 994 (1897).

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) the Supreme Court held that when a state rule requires an objection to preserve a claim, a failure to object bars review of the claim on federal *habeas* "absent a showing of cause for non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." 433 U.S. at 84, 97 S.Ct. at 2505. *Sykes* dealt with a claim that there was a constitutional violation in admitting evidence of a petitioner's inculpato-ry statement. The holding of *Sykes* was reiterated in the context of failure to object to an instruction in *Engle v. Isaacs,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). In *Isaacs* the Supreme Court also rejected a contention that the Court "should replace or supplement the cause-and-prejudice standard with plain-error inquiry." 456 U.S. at 135, 102 S.Ct. at 1575.

Petitioner did not allege any cause for his trial counsel's failure to object. The petition is signed (and may well have been prepared) by his present counsel. Petitioner's present counsel suggests no cause other than an explanation that, as recognized by the Supreme Court of Indiana, trial counsel may have had no advance notice of the remarks the court intended to address to the jury. There is no indication of cause for not objecting after the remarks were made, and no indication that objection would have been futile. An objection at that point would have given the trial court an opportunity to give curative instructions.

It is clear that the trial judge was not committed to forcing the jury to continue its deliberations through the night, for he suggested that if counsel consented, he could "[s]end [the jury] home for the night and bring them back for deliberations tomorrow morning at ten (10)." 482 F.Supp. at 1085.

As intimated by the district court, trial counsel may have gambled that continued deliberation under the circumstances would produce acquittal.

*Sykes* and *Isaacs* require both a showing of cause and some showing of actual prejudice.

There having been no showing of cause, it may not be necessary to consider whether prejudice was shown. It would, of course, be difficult to demonstrate that in fact the guilty verdict was produced by the remarks at issue. There are facts, however, which, when considered together, arguably show the contrary. Although the jury had deliberated for hours without agreement, there was no assertion that agreement was impossible, and a little more than an hour before the remarks at issue, the jury had requested rereading of an exhibit, and it had been reread. After the judge's re-

marks, the jury continued deliberating for three and one-half hours before reaching a verdict, and when the jury was polled, each juror acknowledged the verdict to be his or hers.

The jury had originally been instructed, in part, as follows:

> The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agrees thereto. Your verdict must be unanimous.
>
> It is your duty, as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or the effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
>
> Your sole interest in this case is to ascertain truth from all the evidence.

As part of the instruction on reasonable doubt, the jury was instructed "The doctrine of reasonable doubt applies to each juror individually, and it is the duty of each juror to refuse to convict as long as he entertains a reasonable doubt as to the defendant's guilt as charged."

Petitioner points out that Indiana recognizes a doctrine of fundamental fairness which permits palliation of its contemporaneous objection rule. "The doctrine of fundamental error allows an appellate court to by-pass the normal rules of appellate procedure, such as the requirement of a timely and specific objection, when it appears that a reluctance to invoke the doctrine would amount to blatant error that denies the appellant fundamental due process." *Henderson v. State,* 395 N.E.2d 224, 227 (Ind.1979), *Teague v. State,* 269 Ind. 103, 129, 379 N.E.2d 418, 430 (1978), *Wilson v. State,* 222 Ind. 63, 83, 51 N.E.2d 848, 856 (1943).

The Supreme Court of Indiana did not resort to this doctrine in petitioner's case. Petitioner points to a Fourth Circuit decision, *Miller v. State of N.C.,* 583 F.2d 701 (4th Cir. 1978), decided after *Sykes,* but before *Isaacs.* In that case, the court of appeals reversed a denial of a writ, and remanded with directions to issue the writ unless North Carolina afforded a new trial. Petitioners asserted that they had been denied due process by the prosecutor's racially inflammatory argument. There had been no ·objection at trial. The Supreme Court of North Carolina had, as one ground for affirmance, relied on the state's contemporaneous objection rule. That rule was subject to an exception, in a capital case such as Miller's, "if argument of counsel . . . is so grossly improper that removal of its prejudicial effect, after a curative instruction, remains in doubt." 583 F.2d at 705. Although the state supreme court had decided that the challenged argument was not within the exception, the court of appeals concluded that it could determine for itself that the argument was within the exception, that the state rule was therefore inapplicable, and that *Sykes* did not prevent federal consideration of the claim.

Petitioner here argues, parallel to *Miller,* that we may decide that the Indiana doctrine of fundamental error applies here and thus, consistent with *Sykes* and *Isaacs,* may reach petitioner's claim that the trial judge's remarks deprived petitioner of liberty without due process.

Petitioner's proposition comes perilously close in substance to a doctrine of plain error, expressly rejected in *Isaacs.*

Nevertheless, we take note of parts of both *Sykes* and *Isaacs* which indicate that although the cause-and-prejudice standard must govern, the terms have not been wholly defined, and may in the future be given content in the light of experience so that federal courts may respond "to the imperative of a fundamentally unjust incarceration" and "a fundamental miscarriage of justice."

As stated in *Isaacs,* 456 U.S. at 135, 102 S.Ct. at 1575:

> The terms "cause" and "actual prejudice" are not rigid concepts; they take

their meaning from the principles of comity and finality discussed above. In appropriate cases those principles must yield to the imperative of a fundamentally unjust incarceration. Since we are confident that victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard, *see Wainwright v. Sykes, supra,* 433 U.S. at 91, 97 S.Ct. at 2508–2509; *id.* at 94–97, 97 S.Ct. at 2510–2511 (Stevens, J., *concurring*), we decline to adopt the more vague inquiry suggested by the words "plain error."

As stated in *Sykes,* 433 U.S. at 90–91, 97 S.Ct. at 2508–2509:

The "cause"-and-"prejudice" exception of the *Francis* rule will afford an adequate guarantee, we think, that the rule will not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be the victim of a miscarriage of justice. Whatever precise content may be given those terms by later cases, we feel confident in holding without further elaboration that they do not exist here.

The concurring opinion in *Sykes* by Justice Stevens, referred to in *Isaacs,* includes the following:

Matters such as the competence of counsel, the procedural context in which the asserted waiver occurred, the character of the constitutional right at stake, and the overall fairness of the entire proceeding, may be more significant than the language of the test the Court purports to apply. I therefore believe the Court has wisely refrained from attempting to give precise content to its "cause"-and-"prejudice" exception to the rule of *Francis v. Henderson,* 425 U.S. 536 [96 S.Ct. 1708, 48 L.Ed.2d 149]. . . .

Finally, there is clearly no basis for claiming that the trial violated any standard of fundamental fairness.

433 U.S. at 95–97, 97 S.Ct. at 2511–2512.

Petitioner relies on *Jenkins v. United States,* 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965); *United States v. Chaney,* 559 F.2d 1094 (7th Cir. 1977);

*United States v. Silvern,* 484 F.2d 879 (7th Cir. 1973); *United States v. Brown,* 411 F.2d 930 (7th Cir. 1969). All these decisions were appellate reviews of federal convictions. In *Jenkins* the jury had indicated inability to agree and the judge "in the course of his response stated that 'You have got to reach a decision in this case.'" In the light of a partial concession by the Solicitor General, the Court "conclude[d] that in its context and under all the circumstances the judge's statement had the coercive effect attributed to it," and reversed.

In *Silvern* and *Brown* this court affirmed convictions, although in *Brown* we gave a general direction as to future charges to deadlocked juries, 411 F.2d at 934, and in *Silvern* we prescribed an instruction and procedure, doing so "under our supervisory power." 484 F.2d at 882–83. In *Chaney* we applied *Silvern* and reversed a conviction, stating that even if the error were not properly preserved, we would consider it under the plain error rule. Except for a brief interpretative remark in *Chaney,* 559 F.2d at 1098, to the effect that types of supplemental charges had been "condemned [in *Silvern* and *Brown*] as impeding a defendant's right to trial by an impartial jury and to due process," none of these decisions expressly discussed supplemental charges in terms of a denial of due process. And whatever they may imply in defining Fourteenth Amendment due process requirements, they provide no guidance in dealing with the *Sykes* and *Isaacs* rules.

Finally, assuming that the Supreme Court contemplated that the lower federal courts would be free to bend or depart from the cause-and-prejudice standard in exceptional cases where that would be the only way to avoid a clearly perceived miscarriage of justice, we are not persuaded that this is such a case.

The judgment appealed from is AFFIRMED.

SWYGERT, Senior Circuit Judge, concurring in the result.

Although the facts are recounted in the district court's opinion, 482 F.Supp. at 1084–86, it is helpful to review the basis of Ortiz's objection.

At 1:55 a.m., after ten hours of deliberation, and without consulting counsel, the trial judge gave the following *Allen*-type charge to the jury.

COURT: Do all of you understand *that this case is going to have to be decided* and that if you do not reach a verdict *the case will have to be re-tried* do you understand that, and that you have all taken an oath that you will well and truly try the case before you. I have sent in the instructions have you any difficulty with that?

JURY: No.

COURT: *I am certain that with enough deliberations that you will be able to reach a verdict.* You should if you have any messages to send to your families you should write them on sheets of paper and hand them to the bailiffs. *You will be sequestered until further notice.* Now you may return to the jury room and deliberate upon a verdict.

(emphasis added.)

In my view this charge was far more offensive than the original *Allen* charge itself which was in substance

that in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896). Unlike the original *Allen* charge, the judge's instructions here were imbalanced, contained misstatements of law and fact, and undoubtedly left the jury with the erroneous impression that they could remain locked in deliberations forever—unless a juror gave up his conscientiously held beliefs.

Defense counsel, however, made no objection to the charge after it was given (and after the damage was done) and even though it was impossible to object to the charge before it was given, *Engle v. Isaacs,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), controls and requires my concurrence in the result reached by the majority. Even though I must yield to *stare decisis,* I firmly believe that the offending charge resulted in fundamental unfairness with attending prejudice. And, with great deference, I further believe that a person serving a life sentence ought not to be deemed to have forfeited his rights to a fair trial simply because his lawyer, for whatever reason, failed to utter the magic words "I object" after the trial judge had finished his prejudicial, extemporaneous post-submission charge. In my considered opinion, technicalities such as this should not be used when a miscarriage of justice may result.