96 F.3d 1450
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Michael KELLEY, Petitioner-Appellant,
v.
Al C. PARKE, Superintendent, Indiana State Prison,
Respondent-Appellee.+
 No. 95-3840.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 8, 1996.*
Decided Sept. 4, 1996.
 
 Before POSNER, Chief Judge, and ROVNER and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Michael Kelley appeals the denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254.[1] The core of Kelley's claim is that the trial judge committed constitutional error when he made certain statements to the jurors during a break in their deliberations in Kelley's trial for murder. The gist of the allegedly improper comments is as follows. (We garner this information from testimony given in a state post-conviction proceeding because no record was made of the events in question at the time of trial.) On the first day of the jury's deliberations, the judge called the jury into open court at about 10:00 P.M. They had been deliberating since approximately noon. Upon inquiry, the foreman indicated that they still had not reached a verdict. At that point, the judge raised the possibility of the jurors' being sequestered in a hotel. The jurors responded that they did not want to go to a hotel. At that point, according to Kelley's testimony at the post-conviction proceeding, the judge stated that he would give the jury one more hour to deliberate at which point they would be sequestered for the night. The jury returned a guilty verdict within the hour.
 
 
 2
 Kelley's claim is, roughly speaking, that the trial judge gave an impermissible Allen charge. See Allen v. United States, 164 U.S. 492 (1896). The Allen or dynamite charge, whereby a judge encourages members of a deadlocked jury to reconsider the soundness of their view of the case, was actually approved by the Supreme Court. However, "although no court has held that the instruction itself is unconstitutional, it has had a stormy career." United States v. Silvern, 484 F.2d 879, 880 (7th Cir.1973) (en banc ). Most importantly with regard to the instant matter is that in a trio of cases we established what would and would not be an acceptable direction from a judge to a jury that was in the midst of deliberations. In United States v. Brown, while concluding that reversal was not mandated because the defendant had not shown sufficient prejudice, we expressed our concern that an Allen-like charge has a potentially coercive effect upon juries. 411 F.2d 930, 933 (7th Cir.1969). We also concluded that "the interest of justice would be served [by] requir[ing] under our supervisory power that ... district courts within this Circuit when faced with deadlocked juries comply with the standards suggested by the American Bar Association's Trial By Jury publication." Id. at 933-34. In Silvern, while again not reversing the defendant's conviction, we expressed our concern with the district judge's charge that ran afoul of the standards we put forth in Brown. Silvern, 484 F.2d 882. Again relying upon our supervisory power, we prescribed guidelines similar to those we had put forth in Brown for a judge to use when dealing with a deadlocked jury. This time we indicated that we would reverse and remand for a new trial any case in which a conviction was obtained following Allen-type charges that did not comply with our commands. In United States v. Chaney, 559 F.2d 1094 (7th Cir.1977), we overturned a conviction because the jury instructions ran afoul of the guidelines that we put forth in Brown. In that case the jury returned a guilty verdict several hours after the trial judge told the jurors at 12:20 A.M. (at which point they had been deliberating for several hours) that if the jury did not arrive at a verdict by 9:30 the next morning that the court would "then determine what course should be taken." Id. at 1097. In reversing the conviction, we held that "these jurors might have understood the supplemental charge as meaning that they must reach a verdict to be avoid being locked up until 9:30 A.M. ... that [the judge] was too busy to try the case again, so that they must deliberate until reaching a verdict.... [or] that even though the jury deliberated until 9:30 A.M., the court might require them to continue deliberating thereafter even though they had been without sleep since the preceding morning." Id. at 1098.
 
 
 3
 The comments that the trial judge made in the instant case are similar to (if not quite as strong as) the comments in Chaney. The jurors had indicated that they did not want to go to a hotel. The judge then told them that if they did not reach a verdict that they would be sequestered. We do not suppose that the judge was intending to coerce the jury into reaching a verdict. Rather, we believe that he was working out the logistics of arranging accommodations in the event that the jury did not reach a verdict before the wee hours. The judge's proper motive notwithstanding, in Chaney we concluded that "the innocently intended instruction [tendered in that case] could not pass muster" because of the potential that it had for coercing the jury into believing it must reach a verdict quickly. 559 F.2d at 1098.
 
 
 4
 The instruction in the present case is close enough to the charge that we found merited reversal in Chaney, that if the line of cases in which we set out guidelines for district court judges to follow when giving instructions to juries in the midst of deliberations established a constitutional standard for state trials, Kelley would have a strong argument for reversal in the present case. In Brown, Silvern, and Chaney, however, we were acting pursuant to our supervisory power over district courts. See Chaney, 559 F.2d at 1098 (stating that in Brown and Silvern we were "[a]cting under this Court's supervisory power rather than [pursuant to] a constitutional imperative"); Silvern, 484 F.2d at 882 (stating that we were giving direction to the district courts "under our supervisory power"); Brown, 411 F.2d at 932 (indicating that we were putting forth standards to be used in future case because of confusion among district courts within our circuit); see also Ortiz v. Duckworth, 692 F.2d 39, 42 (7th Cir.1982) ("Except for a brief interpretative remark in Chaney, 559 F.2d at 1098, to the effect that types of supplemental charges had been 'condemned [in Silvern and Brown ] as impeding a defendant's right to trial by an impartial jury and to due process,' none of these decisions expressly discussed supplemental charges in terms of a denial of due process."). Therefore, Kelley has not pointed to any authority that holds that in a state court trial a jury instruction of the nature that the judge gave in the present case violates the federal constitution or federal law. As such, Kelley's claim is not one which merits granting a writ of habeas corpus. See 28 U.S.C. § 2254(a) ("[A federal court] shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir.1995).
 
 
 5
 It appears that Kelley's implicit argument is that we should hold that the standards that we set for district courts, should also apply to state courts as a constitutional matter. To be sure, the cases in which we have addressed jury charges resembling those in the instant case have generally arisen in the context of an appeal from a district court trial. Therefore, when we ordered a reversal in Chaney, we could do so without having to address the question whether the instructions were violative of the Constitution. As such, when we held that we were reversing pursuant to our supervisory power rather than because the instructions were unconstitutional, we were not saying that the instructions were constitutional; we were not passing on the constitutionality of the instructions. Therefore, we have not passed on whether instructions such as those that Kelley challenges are constitutional. As we explain below, however, the determination of this issue will have to wait for another day.
 
 
 6
 A petitioner cannot succeed in pressing a new rule of constitutional criminal procedure in a petition for a writ of habeas corpus unless the rule would apply retroactively to all defendants on collateral review. Teague v. Lane, 489 U.S. 288, 316 (1989). Even though neither party has addressed retroactivity in the present case, we can raise this issue sua sponte. Id. at 300; see also Caspari v. Bohlen, 114 S.Ct. 948, 953 (1994) ("A court may, but need not, decline to apply Teague if the state does not argue it."); accord Eaglin v. Welborn, 57 F.3d 496, 499 (7th Cir.) (en banc ), cert. denied, 510 U.S. 383 (1995). In general, in a habeas corpus proceeding the constitutional standards that a court applies are those that were in effect at the time of the original state court proceedings. Teague, 489 U.S. at 306. There are two exceptions to this rule of nonretroactivity. First, a new constitutional rule should be applied retroactively if it shields certain individual conduct from being subject to criminal liability. Id. at 307. Second, retroactive application of a rule is appropriate "if it requires the observance of 'those procedures that ... are "implicit in the concept of ordered liberty." ' " Id. (quoting Mackey v. United States, 401 U.S. 667, 693 (1971) (Harlan, J., concurring in judgment in part and dissenting in part) (quoting Palko v. Connecticut 302 U.S. 319, 325 (1937))). The first exception is not relevant to the present case. In addition, the judge's comments regarding hotel arrangements did not violate a "watershed rule[ ] of criminal procedure" and therefore do not fall under the second exception. Id. at 311. Thus, the constitutional argument that Kelley makes in the present case would not apply retroactively to other defendants seeking collateral review and therefore cannot apply to Kelley himself. Because we make this determination, we do not reach the question as to whether comments such as the judge made in the present case violate a defendant's constitutional rights.
 
 
 7
 We also reject Kelley's contention that the district court should have held a hearing because the state court record was inadequate. Because it is clear that a judge's comments to a jury regarding sequestration does not violate any established constitutional principle, there is no need to establish word for word what the judge said to the jury in the instant case. In addition, even though no contemporaneous record was made of the judge's comments, the state court record of the post-conviction hearing, at which both Kelley and his trial attorney testified, provides a satisfactory account of the statements in question. Moreover, in his appeal to this court, Kelley has not put forth a different version of the events than is reflected in the transcript of the hearing. Therefore, because he does not allege facts that if true would entitle him to relief, "a hearing at which [Kelley] may prove those facts [would be] useless." Matta-Ballesteros v. Henan, 896 F.2d 255, 258 (7th Cir.), cert. denied, 498 U.S. 878 (1990).
 
 
 8
 The order of the district court denying the petition for a writ of habeas corpus is
 
 
 9
 AFFIRMED.
 
 
 
 + The original petition named Robert A. Farley as respondent. Petitioner's current custodian is Al C. Parke, the Superintendent of the Indiana State Prison. Therefore, he has been substituted as the respondent. 28 U.S.C. § 2254, Rule 2; Fed.R.App.P. 43(c)(1).
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Subsequent to the parties' submitting briefs to this Court, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214. This law, inter alia, amends 28 U.S.C. § 2254(d) to require federal courts to give greater deference to state court findings in habeas corpus proceedings than under the previous law. Because in the three months since the enactment of this law the state has not asked us to consider whether it affects the case, we consider the issue waived. See Emerson v. Gramley, Nos. 95-2988, 95-3018, slip op. at 2 (7th Cir. July 30, 1996). Therefore all references to the codified habeas corpus statute will be to the version that existed prior to the effective date of the new law