**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Besim ZENDELI, Defendant–Appellant, Cross–Appellee.**

Nos. 98–3132, 98–3348.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1999.

Decided June 17, 1999.

Lawrence S. Beaumont, Office of the United States Attorney, Urbana Division, Urbana, IL, Rodger A. Heaton (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee in No. 98–3132.

Rodger A. Heaton (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellant in No. 98–3348.

Ronald E. Halliday (argued), Parker & Halliday, Peoria, IL, for Besim Zendeli.

Before WOOD, Jr., RIPPLE, and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Well, certainly the Defendant's sentence is out of whack to what that fellow got, and I am disturbed by that.... [Both the government and the defendant will have the] right to appeal and then you can make the decisions, but I am making this one ... I feel more comfortable with a 10–year sentence [rather] than a 17–year sentence.... The great disproportionality of the sentence of the codefendants would make a 17–year sentence patently unfair and unjust.

Those are just a few excerpts from Chief Judge McDade's remarks at the sentencing of the defendant, Besim Zendeli. Chief Judge McDade did what he said he intended to do and, instead of imposing a 17–year total sentence, he departed downward to a sentence of 10 years. He was unable to find justification for the reduction under the statute or Sentencing Guidelines, but he did it anyway. For him, justice and principle were paramount to following the sentencing strictures. Chief Judge McDade passed the problem to us, which is one reason we are here. Our problem is not with a substantial sentence being imposed for arson, an extremely dangerous crime. Arson has the potential to injure or kill innocent persons. However, as was Chief Judge McDade, we are concerned about the great disparity in the sentences of the three arson coconspirators. The problem appears to be caused by various factors including among others the government's charging decisions and

its plea bargains with Zendeli's two coconspirators.[1]

Defendant Zendeli went to trial maintaining his innocence. On appeal, he raises several issues about his guilt, but his guilt is as clear as that of his coconspirators. His arguments in that regard are without merit. The issues he raises, however, concerning the application of the personal injury enhancement under Count 1 and the propriety of his conviction under Count 4 need to be examined. The government cross-appeals Chief Judge McDade's downward departure from the statutory mandatory minimum sentence required under 18 U.S.C. § 844(h).

## I.

### Background

This case arises out of a June 26, 1996 arson involving a restaurant located in Fairbury, Illinois and the defendant's resulting insurance claim. The three people involved were the defendant, Besim Zendeli, the owner of the burned and insured restaurant; Pajazit Ajroja, who actually caused the fire with gasoline; and Naser Ahmedi, Zendeli's brother-in-law, who facilitated the arson in other significant ways.

On July 11, 1997, a federal grand jury returned a 4–count indictment dealing with the restaurant arson. Zendeli, Ajroja, and Ahmedi all were charged in Count 1 with maliciously damaging by fire a café building in Fairbury, Illinois in violation of 18 U.S.C. § 844(i). A violation of this section requires a sentence of imprisonment "for not less than 5 years and not more than 20 years . . ." with a possible fine in addition. 18 U.S.C. § 844(i). However, "if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection," the sentence

"shall be imprisonment for not less than 7 years and not more than 40 years." Id.

Count 2 charged all three men with conspiracy to commit the arson offense charged in Count 1 in violation of 18 U.S.C. § 371. A violation of that section provides for a sentence of not more than 5 years. 18 U.S.C. § 371. In Count 3, only Zendeli was charged with mail fraud in connection with the attempt to recover insurance based on the arson charged in Count 1 in violation of 18 U.S.C. § 1341. A violation of that section provides for a prison sentence of not more than 5 years. 18 U.S.C. § 1341. In Count 4, naming only Zendeli, the indictment charged a violation of 18 U.S.C. § 844(h), namely use of "fire to commit a felony which may be prosecuted in a court of the United States, that is to violate Title 18, United States Code, § 1341, Mail Fraud, which is fully set out in Count 3." A violation of § 844(h) requires a sentence of imprisonment for 10 years to run consecutively to any other term of imprisonment. 18 U.S.C. § 844(h).

All three coconspirators originally denied any involvement in the restaurant arson and entered pleas of not guilty. Eventually, Ajroja and Ahmedi entered into plea agreements with the government in which they agreed to cooperate with the government with regard to the Fairbury arson. The plea agreements provided in general that the government would move for reduced sentences if the coconspirators provided substantial assistance in the investigation and prosecution. The government also agreed to recommend to Immigration officials that Ajroja and Ahmedi receive S-visas to help them avoid deportation back to the Balkans after they completed their sentences.

Both Ajroja and Ahmedi admitted to prior arson experience in which Zendeli was not involved. In 1996, Ahmedi wanted a rental property he owned to be burned.

---

1. The other two conspirators, Pajazit Ajroja and Naser Ahmedi, are not involved in this appeal.

He hired Ajroja to accomplish that for him which Ajroja successfully did by throwing a Molotov cocktail into the building. For that service, Ajroja was to receive $1,000 of the $10,000 Ahmedi expected to collect from his insurance company. Ahmedi collected the insurance proceeds, but then declined to pay Ajroja his fee for his arson accomplishments. Ajroja, however, quickly persuaded Ahmedi to change his mind and to pay him his share by threatening to burn down a restaurant Ahmedi owned but did not want burned. Ajroja had had some additional prior criminal experience. He was a career criminal offender, having been incarcerated in the state penitentiary on six occasions. His prior offenses included, among other things, armed robbery, which included entering a home and tying and gagging the woman occupant, and on another occasion the unlawful discharge of a Colt .45 handgun. This time, however, Ajroja escaped being charged with the rental house arson and related offenses, as did Ahmedi, because for its purposes in the present case the government came to their rescue.

A short recap of the evidence is necessary. When Zendeli heard about the prior successful arson of Ahmedi's rental property which had been arranged and perpetrated by Ahmedi and Ajroja, he inquired about obtaining their services for his own arson. At Zendeli's trial, Ajroja testified that, in May 1996, Ahmedi asked him how much it would cost to burn Zendeli's restaurant. Ajroja quoted a price of $5,000. Several weeks later, Ahmedi again contacted Ajroja to advise him the price was satisfactory to Zendeli. The three men met later at Ahmedi's restaurant in Odell, Illinois to further discuss the proposed joint arson project. The arson did not happen on the date they had tentatively set, but finally all three agreed on the new date of June 26. The plan was for Ahmedi to pick up Ajroja that evening and take him to the rear of Zendeli's restaurant. Ajroja then would enter the basement to start the fire. The plan proceeded as scheduled. On the night of the arson,

Ajroja took along a container of gasoline to ignite the fire. He descended into the restaurant basement, escorted by owner Zendeli who met the men at the restaurant, but Zendeli quickly left. Ajroja proceeded to pour his gasoline on the basement floor, but then there was a deviation from their plans. Ajroja did not have to ignite the gasoline as the pilot light on the water heater quickly took care of that for him. Ajroja was badly burned in the resulting blaze. He escaped from the basement and got into Ahmedi's waiting getaway car. However, Ahmedi declined to take Ajroja to the hospital. Ahmedi had quickly decided he no longer wanted to be involved with Ajroja in the arson. Ajroja then got out of Ahmedi's car and went into a nearby tavern. Ajroja told the people in that establishment that he had just been robbed and that the robber had poured gasoline over him and set him on fire. An ambulance was called, and Ajroja was taken to a hospital in nearby Pontiac, Illinois. From there, he was flown for treatment to a special burn unit in Springfield, Illinois. His burns were unquestionably serious.

Following the fire, Zendeli hired a public adjuster to prepare and to submit a proof of loss claim for him to his insurance company so he could benefit from the arson escapade as was his intention. That claim totaled $209,000. The adjustor mailed the claim in November 1996 to Zendeli's insurance company by United States mail. The insurance company declined the invitation to pay the loss. After his claim was denied, Zendeli borrowed money and reopened the restaurant in April 1997. Following the July 1997 indictment, Zendeli maintained his innocence and, in April 1998, proceeded to trial. The jury returned a verdict of guilty against him on all four counts.

After withdrawing their pleas of not guilty, Ahmedi and Ajroja were both sentenced on May 8, 1998. Ajroja entered pleas of guilty to Counts 1 and 2, not being charged in Counts 3 and 4. Ajroja's sen-

tencing range under the Guidelines was 188 to 235 months. The court granted the government's motion for a 6–level downward departure for substantial assistance which lowered the range to between 110 and 137 months. The court then granted an additional downward departure at defense counsel's request which further lowered the range to 84 to 105 months. The sentence imposed on Ajroja was the minimum of 84 months, or a total of 7 years.

Ahmedi also entered a plea of guilty, but only to Count 2. It appears that the government moved to dismiss Count 1 as to Ahmedi, a request which was granted by the court. Ahmedi's Guideline range was therefore 24 to 30 months. The government moved for a 5–level reduction which was granted and which further lowered Ahmedi's range to 10 to 16 months. A minimum sentence of 10 months was imposed, but with only 7 of those months to be served in prison, the remaining 3 months were to be served in home confinement. The dismissal of Count 1 against Ahmedi avoided the statutory minimum of 5 or 7 years under § 844(i). Furthermore, the admitted prior arson of Ahmedi's rental building was forgiven; no charges were brought with respect to that incident. Ajroja's and Ahmedi's sentences were imposed following Zendeli's conviction but before his sentencing.

Zendeli was sentenced on August 26, 1998. Zendeli did not have the benefit of any plea agreement. It appears to us from the record that he, too, was offered a plea agreement at some stage of the proceedings, but declined for reasons apparent only to him, maintaining his innocence. That he had a right to do, but this decision in the long run contributed to the severity of his sentence. On Count 1, Zendeli was sentenced to 7 years, the statutory minimum. On Counts 2 and 3, Zendeli was given 5–year sentences concurrent to one another and to the sentence imposed on Count 1. On Count 4, he was sentenced to 3 years consecutive to the sentence imposed under Count 1, for a total of 10 years. Chief Judge McDade found this reduced sentence to be "fair and proportionate" to the sentences previously imposed on the other coconspirators.

As noted above, a conviction for a violation of 18 U.S.C. § 844(h) under Count 4 carried with it a statutory mandatory minimum sentence of 10 years consecutive to any other term of imprisonment imposed. The government in its cross-appeal seeks a remand on Count 4 to correct the district court's downward departure so that the mandatory minimum sentence of 10 years can be imposed. That would result in a total sentence for the defendant of 17 years which would reestablish the disparity Chief Judge McDade had declined to create.

It was the comparison of those three sentences of the coconspirators ranging from 10 months, to 7 years, to 17 years, which concerned Chief Judge McDade. Ajroja, the career criminal, who had successfully accomplished the prior rental building arson for Ahmedi, but who botched this one injuring himself, got the 7 years. Ahmedi, who admittedly collected insurance proceeds for his prior arson, negotiated the Fairbury arson deal, delivered Ajroja to the arson scene, and returned to serve as the getaway driver for Ajroja, got the 10–month sentence. It is defendant Zendeli who owned the insured building and hired Ajroja with Ahmedi's assistance to burn the building, but who had no prior convictions, who received the 17–year sentence.

The disparity in these sentences concerns this court as much it did Chief Judge McDade. The government in its brief also candidly recognizes the district court's concern over the sentence disparity as "understandable" and concedes the sentence is "harsh." It is not understandable, however, how this disparity was allowed to develop, but we have no choice but to follow the law as we see it. The issue is can this court do anything to remedy the disparity, or must we reluctantly approve it by recognizing the validity of the gov-

ernment's cross-appeal. Only a little relief appears to be available to defendant Zendeli in these circumstances.

## II.

### Analysis

■ We shall first examine Zendeli's sentence of 7 years imposed under Count 1. As previously mentioned, under 18 U.S.C. § 844(i), arson carries a statutory sentence of "not less than 5 years and not more than 20 years." However, if personal injury results, the sentence shall be imprisonment "for not less than 7 years and not more than 40 years." The district judge gave Zendeli the minimum sentence under the statute, 5 years, plus the 2 years due to Ajroja's injury, for a total of 7 years.

■ Zendeli argues that the personal injury enhancement should not apply to him because injury occurred only to his coconspirator, Ajroja, who actually started the blaze. The government argues that the words in the statute "any person" who may suffer personal injury could not be plainer. The government asserts that the statute means what it says, "any person," and, therefore, Zendeli is subject to the 2–year enhancement for his coconspirator's injury. However, the government's position also means that the enhancement theoretically would apply to the burned coconspirator Ajroja himself as well as to the other coconspirator, Ahmedi. Those coconspirators, however, have escaped that possible enhancement. Because the government dismissed Count 1 against him, Ahmedi is not subject to the statutory penalties under § 844(i) or the personal injury enhancement. Ajroja's sentencing guideline range was above the mandatory statutory minimum sentence, so the statute did not come into play in determining his sentencing range. *See* U.S.S.G. § 5G1.1.

The defendant cites *United States v. Schwanke*, 598 F.2d 575 (10th Cir.1979), to support his claim that Congress did not intend for the enhancement to apply when the only injury occurs to a criminal participant. *Schwanke* held that the increased penalty was not intended when it was the arsonist himself who was the only person injured. *Id.* at 578. The government points out, however, that after *Schwanke* was decided, the statute was amended to be even broader and there is now no reason why the defendant should not be included. The statute previously provided for an enhancement "if personal injury results," but as amended provides "if personal injury results to any person...." We do not interpret that statutory change so as to make the statute broader as the government avers or to affect the holding in *Schwanke*. Missing from the statutory quotation in the government's brief is the rest of the sentence which further provides "including any public safety officer performing duties as a direct or proximate result of a conduct prohibited by this subsection." This additional clause may not appear to be important, but we find it helpful in interpreting what Congress intended. As the government notes, in analyzing statutory language, the statute must "be read as a whole, since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991).

On its face, the government's broad statutory interpretation argument appears to be reasonable. The government argues that the statutory language is so plain that our only function must be to enforce the statutory requirement according to its terms. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). That is the general rule, but it is inconceivable to us that Congress intended to increase the punishment on the other coconspirators if it was only a coconspirator arsonist who was injured and nobody else. *See Hubbard v. United States*, 514 U.S. 695, 115 S.Ct. 1754, 1759, 131 L.Ed.2d 779 (1995); *United States v. Hayward*, 6 F.3d 1241,

1245 (7th Cir.1993) (stating that a court may look past the express language of a statute "where that statutory language is ambiguous or where a literal interpretation would lead to an absurd result"). Congress surely intended that only innocent third parties who suffered personal injury from the arson were to cause the sentencing enhancement.

Therefore, contrary to the government's advice we consulted the legislative history of that amendment and found it somewhat enlightening. It appears the amendment was prompted because a federal district court had recently held that the death of a firefighter while fighting an arson fire set in violation of federal law did not serve to enhance the arsonist's sentence.[2] That broad coverage was apparently originally intended by Congress to correct the district court holding. S.REP. No. 98–225, at 645 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3128, 3507–08. The amendment does not concern itself with injury to the arsonists themselves, but only to innocent third parties. *Schwanke* is still intact. That is the only logical interpretation. Congress could not have intended otherwise. Because of the statute, the Sentencing Guidelines do not directly apply to affect Zendeli's particular sentence, but, nevertheless, the Guidelines' comments pertaining to arson are instructive. *See* U.S.S.G. § 2K1.4 ("Arson; Property Damage by Use of Explosives"). Both subsections (1) and (2) of § 2K1.4(a) address the "risk of death or serious bodily injury *to any person other than a participant* in the offense." (Emphasis added.)

We therefore find that the personal injury enhancement does not apply as in the present case where the only person injured was the coconspirator arsonist.

Zendeli's sentence should be adjusted accordingly.

■ Next we address Zendeli's contention that the district court erred by denying his motion to dismiss Count 4. Zendeli advances two alternate theories to support this contention. First, he asserts that the arson was not used to commit the mail fraud as required under § 844(h)(1). Alternatively, Zendeli contends that sentencing him under both § 844(i) and § 844(h) results in impermissible double punishment for a single arson.

Defendant argues that the arson of his restaurant in June 1996 was unrelated to the mailing in November 1996 of the proof of loss for that same fire. That fraudulent relationship cannot merely be argued away. As the First Circuit held in *United States v. Ruiz*, 105 F.3d 1492, 1503–04, a defendant uses fire to commit mail fraud under § 844(h) when he initiates a fire as part of a scheme to deceive an insurance company into making payments for claimed losses. *Id.* at 1504. Under such circumstances, fire constitutes the means by which the individual attempts to create the appearance of legitimate loss of an insured item. *Id.*[3] Zendeli's argument is without merit.

■ The defendant further argues that he cannot be punished both for the arson under one count and then separately punished for using fire to commit mail fraud in connection with the same arson under another count. That, the defendant claims, amounts to double punishment for the single arson.

To determine if each statutory violation charged amounts to a separate offense justifying separate punishments depends on the intent of Congress. *Garrett v. United*

---

**2.** The decision of the federal district court referred to in the legislative history is not cited and cannot be located.

**3.** Zendeli attempts to distinguish *Ruiz* from the present case based on the fact that *Ruiz* considered the application of § 844(h) before its amendment pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 when the statute provided only a 5–year enhancement. The 1996 amendment, however, only increased the penalties under § 844(h); it did not otherwise alter the section. The reasoning in *Ruiz* is not affected by the amendment.

*States*, 471 U.S. 773, 778, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); *Whalen v. United States*, 445 U.S. 684, 690–92, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), involved the sale of narcotics in which the question was whether two different sections of a statute could be violated by only one sale and, thereby, constitute two separate violations. It was held that even where both sections were violated by only one sale, two separate offenses were committed since one section required proof of an additional fact which the other did not. *Id.* at 303–04, 52 S.Ct. 180. Separate punishments were therefore justified. *Id.* at 304, 52 S.Ct. 180.

The present case is a stronger case for two separate charges than was *Blockburger* since it involves the proof under one count of an additional crime which the other count does not. Arson requires only proof of the arson, but in Count 4, in addition to arson, it must also be shown that the United States mails were used to try to defraud the insurance company. That more time elapsed between the arson and the fraudulent insurance claim than in the separate drug sales in *Blockburger* is irrelevant. Separate punishments are justified under the statutes for separate but related crimes. Convictions have been affirmed in which sentences were imposed under both § 844(h) and § 844(i). *See, e.g., United States v. Marji*, 158 F.3d 60 (2d Cir.1998) (per curiam); *Sicurella v. United States*, 157 F.3d 177 (2d Cir.1998) (per curiam); *United States v. Serang*, 156 F.3d 910 (9th Cir.1998); *United States v. Gaydos*, 108 F.3d 505 (3d Cir.1997). In the present case, the result of that statutory interplay might seem excessive. However, the remedy for any dissatisfaction lies with Congress and not with this court as only Congress may amend the statute. *Hayward*, 6 F.3d at 1246 n. 6 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).

The ruling on the government's cross-appeal must be reversed, and the case remanded for resentencing under the statute in accordance with this opinion. Neither Chief Judge McDade's offended sense of fairness nor ours can change this result.

All of the defendant's other claims are without merit.

### III.

■ Some comment may be in order, however, about what developed in this case. The terms of plea bargains are within the discretion of the United States Attorney. However, under Fed.R.Crim.P. 11, the plea bargain may be rejected by the trial court or deferred until after the review of the presentence report. In this case, the plea bargains of the coconspirators were accepted and their sentences imposed before the district court could clearly foresee the effect Zendeli's 4–count conviction would have on his sentence.

Although there is nothing we can do about the government's exercise of its discretion in plea bargains, nevertheless what happened in this case deserves some attention. It resulted in what Chief Judge McDade characterized as "out of whack" sentences which even the government recognized. The United States Attorney, in his or her discretion, controls what is charged against whom and which defendants are to be offered plea agreements. For a defendant's assistance to the government some reasonable leniency is appropriate. There may have been good reasons for the government's plea agreement decisions not readily apparent to us. This botched arson, however, does not look like it would have been too difficult to solve and prosecute even without such lenient plea bargains. If a plea bargain was needed, possibly a reasonable plea bargain only with Ahmedi who knew the parts which both Ajroja and the defendant played in the arson would have more fairly accomplished the government's purposes.

However, in our judgment, some effort should be made to ensure that the unfair

sentence disparity which resulted in this case does not reoccur in future cases. The avoidance of this problem will require that the trial court and the government both be alert to the possibility of unjustified sentencing disparity. What we can do here on appeal is very limited. Since the government also recognizes the problem as did Chief Judge McDade, perhaps on remand some option still remains with the government in the exercise of its prosecutorial discretion. We ask the district court and the government to explore that last possibility before this sentence takes effect. Justice should be just.

### IV.

#### *Conclusion*

Zendeli's conviction is affirmed. His sentence, however, is vacated and the case is remanded for the imposition of a new sentence in accordance with this opinion. This case is remanded for that purpose to Chief Judge McDade. Circuit Rule 36 does not require reassignment to another judge, but if, under these circumstances, Chief Judge McDade prefers, he may assign this case to another judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Costs are to be borne by the government.

RIPPLE, Circuit Judge, dubitante.

This case presents a very difficult question of statutory interpretation and my colleagues have conscientiously and carefully employed the accepted methodology in dealing with it. As our earlier decision in *United States v. Chaney*, 559 F.2d 1094 (7th Cir.1977) evidences, the congressional intent, which must, in the last measure, be the determining factor, *see Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), is not clearly evident from the text or from the structure of the statute. In *Chaney*, although the statute

set forth, in two distinct subsections, the crimes of arson and of using fire to commit a federal felony, we nevertheless concluded that the crimes constituted the same offense for purposes of the Double Jeopardy Clause. In that case, the alleged federal felony was the same arson as the one charged under the arson subsection.

Faced with such ambiguity, my colleagues rely on the approach outlined in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether the offense of arson, 18 U.S.C. § 844(i), and the offense of using fire to commit a federal felony, 18 U.S.C. § 844(h), can be considered separate offenses for purposes of sentencing. This is the approach mandated by the Supreme Court in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). *See also United States v. Corona*, 108 F.3d 565, 572 (5th Cir.1997) (holding that, when the statute is ambiguous, the "same elements" test of *Blockburger* is the appropriate interpretive tool). To be sure, the crime of arson and the crime of the use of fire to commit the federal felony of mail fraud are separate crimes. Unlike the situation that confronted this court in *Chaney*, 559 F.2d at 1095–96, the offense of using fire to commit a federal felony here invokes an element not found in the arson count—the commission of the mail fraud. Because these offenses each require proof of an element not found in the other, the offenses are separate and therefore not multiplicitous for sentencing purposes even when the counts involve the same use of fire. *See United States v. Nguyen*, 28 F.3d 477, 482 (5th Cir.1994); *United States v. Fiore*, 821 F.2d 127, 130–31 (2d Cir. 1987).[1]

Nevertheless, I respectfully submit that the misgivings articulated by Judge Newman of the Second Circuit in *Fiore* require some hesitation in applying the *Blockburger* test in such an automatic fashion. The complexities of modern criminal statutes

---

1. In later cases, the Second Circuit has adhered to this view. *See United States v. Marji*, 158 F.3d 60 (2d Cir.) (per curiam), *cert. denied,* — U.S. —, 119 S.Ct. 607, 142

L.Ed.2d 547 (1998); *Sicurella v. United States*, 157 F.3d 177 (2d Cir.1998) (per curiam).

do not make those statutes easily amenable to the interpretative tools fashioned for use in a time when most criminal statutes were far less complex. Moreover, the Supreme Court in *Whalen* has suggested that there may be instances in which Congress does not intend cumulative punishments even for offenses that contain different elements. *See Whalen,* 445 U.S. at 693 n. 7, 100 S.Ct. 1432. There is simply no evidence in this statute, its structure, or the legislative history that Congress has authorized consecutive punishments for arson and for arson in the course of the commission of another felony. *See Fiore,* 821 F.2d at 133 (Newman, J., concurring).

The crime at issue here is a familiar one in contemporary federal criminal practice: The owner of a building conspired with others to burn the building and to collect the insurance proceeds. It is time for Congress to take a hard look at this statutory provision and to clarify whether the mandatory minimum sentence of ten years required by § 844(h) ought to be added to the penalty for arson in such circumstances.