In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2193

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RUBY GARDNER,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 97 CR 20054--Michael P. McCuskey, Judge.

Argued January 12, 2000--Decided May 3, 2000

Before POSNER, Chief Judge, and COFFEY and RIPPLE,
Circuit Judges.

RIPPLE, Circuit Judge.  On April 23, 1995, a fire
occurred at the offices of Gardner Trucking, Inc.
Thereafter, Ruby Gardner was charged with arson
in violation of 18 U.S.C. sec.sec. 844(i) and 2
(Count I), mail fraud in violation of 18 U.S.C.
sec.sec. 1341 and 2 (Counts II and III), and
using fire to commit a federal felony in
violation of 18 U.S.C. sec. 844(h) (Count IV).
Although she pleaded not guilty, a jury found her
guilty on all four counts. The district court
sentenced her to 33 months imprisonment for each
of Counts I, II and III, to be served
concurrently, and to 60 months imprisonment for
Count IV, to be served consecutively to the 33-
month term. Ms. Gardner appeals. She claims that
there was insufficient evidence to convict her,
that the district court abused its discretion in
allowing the expert testimony of Dr. John DeHaan,
and that the sentencing scheme under 18 U.S.C.
sec. 844(h), as applied, does not reflect the
intent of Congress and is also violative of the
Eighth Amendment. For the reasons set forth in
the following opinion, we affirm the judgment of
the district court.

I

BACKGROUND

A.

1.

   Ms. Gardner was part owner, president, and director of Gardner Trucking. Among her duties, she handled the financial aspects of the corporation. Gardner Trucking experienced financial difficulties prior to the fire on April 23, 1995. For example, the company was often late paying its rent. Its drivers experienced difficulties being paid, obtaining money to purchase fuel, and having the company repair their trucks. Revenues at the beginning of 1995 were less than half the revenues from the same time frame in 1994. The company wrote an increasing number of checks without sufficient funds and told several creditors that it was experiencing financial problems.

   Also, at the beginning of 1995, the Internal Revenue Service ("IRS") informed Ms. Gardner that, because of an outstanding tax lien, it would attempt to attach the company's assets. Consequently, on March 30, it required her to produce corporate records to determine if any funds were available for collection. Meanwhile, around March 28, the company received a notice of intent to cancel insurance policies on its trucks based on overdue policy payments. By the week of April 21, Gardner Trucking was not paying its drivers or its clerical employees.

   According to the testimony at trial, at the time of the fire, Gardner Trucking owed $136,000 with just over $10,000 in cash accounts. It had several debts that were past due or in arrears and tax liens from both the Illinois Department of Revenue and the IRS.

   Approximately two weeks prior to the fire, Ms. Gardner called Turner Risk Management seeking an insurance premium quote for Gardner Trucking's office property. Seven days before the fire, she asked her brother-in-law, an independent insurance agent for Funk Insurance Agency, to write a commercial insurance policy for Gardner Trucking. Five days before the fire, the agency issued a 30-day insurance binder on behalf of American States Insurance Company to Gardener Trucking with a contents replacement cost policy limit of $106,200. Prior to receiving this insurance policy, Gardner Trucking had not been insured since October 7, 1994; its previous policy had been canceled because of its failure to pay its premiums.

2.

   Shortly after 3 p.m. on Sunday, April 23, 1995,

Jerry and Judith Livingston were driving to their house, which was located about 60 feet from the building where Gardner Trucking was situated, when a car cut them off. Both Jerry and Judith Livingston testified that the car was driven by Ms. Gardner and that it had the license number LGM 439. The car and license plate were both registered to Ms. Gardner. After driving in front of the Livingstons, the car turned into Gardner Trucking and parked. Jerry Livingston testified that, at this time, no smoke or fire could be seen at Gardner Trucking.

About 20 to 30 minutes after the Livingstons arrived home, a neighbor arrived to tell them that Gardner Trucking was aflame. Jerry Livingston went outside and saw heavy black smoke rising from the building. The Livingstons noticed Ms. Gardner sitting in her car across the street.

Firefighters arrived and forced their way into the building. The volunteer fire chief, Don Madlem, arrived at the fire at approximately 4:12 p.m. and talked with Ms. Gardner. According to Madlem, she appeared excited and concerned about the fire but not hysterical or crying. In fact, he stated that she spoke with a normal, conversational tone.

That same night, Illinois State Fire Marshal Investigator Donald Tankersley arrived to examine the scene of the fire. He observed that the heaviest fire damage had occurred in Ms. Gardner's office and in the adjoining office and concluded that the fire had originated in those two rooms. The center floor area of Ms. Gardner's office was burned out, which indicated intense fire at the floor level. The detection dog alerted in this area and at several places in the adjoining office, which indicated the possibility that an ignitable liquid was present. The dog did not alert in any place other than Ms. Gardner's office and the adjoining office. Tankersley opined, based on the findings and the data collected at the scene, that the fire was set intentionally.

Insurance investigator Stephen Briggs examined the scene of the fire three days later. According to Briggs, the heat and burn patterns were consistent with an accelerant being used in the fire and with two separate areas of origin for the fire. The doors were locked throughout the duration of the fire, and no forcible entry, other than that of the firefighters, was evident. Based on his personal examination of the wiring of the entire building, Briggs determined that the source of the fire was not the electrical system. Although Briggs' written report of his investigation did not state explicitly that he

ruled out the electrical system as the cause of the fire, at trial he testified to that effect. Briggs concluded, at trial, that the fire originated at floor level, that a large quantity of liquid accelerant had been used in Ms. Gardner's office and in the adjoining office, and that the two fires were set intentionally.

As part of the investigation, samples from the scene of the fire were sent to Bri-Mar International Laboratories for analysis. Samples from Ms. Gardner's office and from the adjoining office contained a Class 2 accelerant; Class 2 accelerants include gasolines and camping fuels.

The Government retained Dr. John DeHaan, an expert in investigating the cause and origin of fires, to review the evidence from the fire. He reviewed 120 photographs and the three reports from the investigators of the fire scene./1 He also conducted personal interviews with people who were at the scene to learn additional details about the fire. According to the testimony at trial, experts in the field of fire cause and origin investigation commonly rely on photographs, videotapes, diagrams, sketches, interview reports, and personal interviews with persons present at the scene to formulate an opinion. In Dr. DeHaan's opinion, the data he received was sufficient to make a proper analysis of this particular fire.

Dr. DeHaan opined that two separate origins of the fire existed, that faulty electrical wiring was not the ignition source, and that the burn pattern and the damage were consistent with the use and presence of an accelerant.

3.

Around June 26 or 27, Ms. Gardner sent, through the United Parcel Service, proof of loss to Gardner Trucking's insurer. Then, on July 12, she sent the insurer, through United States Mail, additional documents relating to her insurance claim. These two acts formed the basis for the two counts of mail fraud. They also were the basis for the charge of using fire to commit a felony because the Government argued that Ms. Gardner had used fire to commit the underlying felony of mail fraud.

B.
1.

At trial, defense counsel cross-examined Tankersley about the possibility that electrical wiring had caused the fire, and Tankersley conceded that he had not investigated the electrical system at all but had ruled out the

electrical system as a possible source of the fire based only on reports of other scene investigators. Briggs testified that he had ruled out the electrical system as the cause of the fire by examining the wiring of the entire building, but defense counsel, on cross-examination, attempted to impeach Briggs' method of investigation and noted that Briggs' written report did not state explicitly that he had ruled out an electrical cause of the fire.

Ms. Gardner made a motion in limine to exclude the testimony of Dr. DeHaan, which the court denied. She renewed this motion after Briggs' testimony and claimed that Dr. DeHaan's proposed testimony was cumulative and was lacking in direct knowledge. The district court again denied the motion and ruled that, based on the cross-examination of the Government's other expert witnesses, the testimony was still unclear whether a potential electrical cause of the fire had been properly examined. Dr. DeHaan proceeded to testify at trial that electrical wiring problems had not caused the fire, that an accelerant had been used and, thus, that the fire was set intentionally.

2.

The jury found Ms. Gardner guilty of all four charges in the indictment. At sentencing, the district court determined that Ms. Gardner's offense level was 20 and that her criminal history was Category I. Therefore, the district court found that her guideline sentencing range was 33 to 45 months on the arson and mail fraud counts and that she faced a mandatory minimum of 60 additional months to be served consecutively for using fire to commit a felony. The court sentenced her to 93 months imprisonment: 33 months for the arson count and for the two mail fraud counts, to be served concurrently, and 60 months for the final count of using fire to commit a felony, to be served consecutively.

II

DISCUSSION

A.

We first address Ms. Gardner's claim that her conviction is based on insufficient evidence. When reviewing an insufficiency of the evidence claim, we must accept the evidence in the light most favorable to the prosecution. See United States v. Szarwark, 168 F.3d 993, 995 (7th Cir. 1999); United States v. O'Brien, 119 F.3d 523, 532 (7th Cir. 1997); United States v. Dunigan, 884 F.2d 1010, 1013 (7th Cir. 1989). Also, "[o]ur

inquiry is limited to a determination of whether any rational trier of fact could have found the elements of the offense charged beyond a reasonable doubt." Dunigan, 884 F.2d at 1013. We shall "'overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" Szarwark, 168 F.3d at 995 (quoting United States v. Moore, 115 F.3d 1348, 1363 (7th Cir. 1997)).

The statutory provision for arson states in pertinent part: "Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building" shall be fined and/or imprisoned. 18 U.S.C. sec. 844(i). Ms. Gardner submits that there was insufficient evidence to prove that she had a motive to burn Gardner Trucking. Noting that its obligation is to prove intent, not motive,/2 the Government counters that it presented circumstantial evidence to establish that Ms. Gardner had the requisite intent. That evidence, if credited by the jury, would indeed have shown that she had the necessary intent. Specifically, the Government introduced evidence of her corporation's financial condition. In addition, the evidence showed that she was seen near the building soon before the fire started, that she did not appear upset after learning of the fire, and that the fire had been set intentionally. On the basis of this evidence, a rational jury was entitled to conclude that Ms. Gardner had the requisite state of mind for arson and that she did, in fact, burn Gardner Trucking.

Ms. Gardner also urges us to determine that there was insufficient evidence to find that one of the witnesses who saw her on the scene, Jerry Livingston, was credible. Our review of a jury's credibility determination entails the utmost deference. See Dunigan, 884 F.2d at 1013. "[I]t is not our role, when reviewing the sufficiency of the evidence, to second-guess a jury's credibility determinations." United States v. McGee, 189 F.3d 626, 630 (7th Cir. 1999). As we have stated, "'absent extraordinary circumstances,' this court will not reevaluate the testimony of a witness to determine his or her motives or other possible measures of reliability." Dunigan, 884 F.2d at 1013 (quoting United States v. Garner, 837 F.2d 1404, 1423 (7th Cir. 1987)). The testimony that Ms. Gardner questions was heard by the jury. The jury is the fact-finder and, thus, is the body responsible for weighing credibility. Because Ms. Gardner has not shown us any reason, other than slight contradictions in Livingston's testimony, to reverse the credibility determination of the jury, we hold that her sufficiency of the

evidence claim must fail.

B.

Ms. Gardner next questions the district court's decision to allow the expert testimony of Dr. DeHaan. She submits that his testimony did not have a reliable basis and that it was cumulative. For either of these reasons, Ms. Gardner claims, this court should conclude that the district court abused its discretion in allowing Dr. DeHaan to testify.

1.

Ms. Gardner argues first that the Government did not have a reliable basis for admitting the expert testimony of Dr. DeHaan. Federal Rule of Evidence 702 sets forth when an expert's testimony may be admitted:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702.

Before the district court may allow expert testimony into evidence, the submitting party must show that the testimony has a reliable basis. Rule 703 of the Federal Rules of Evidence explains:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Fed. R. Evid. 703. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), clarifies that an expert may testify after the trial judge determines that "the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Id. at 592.

Here, Dr. DeHaan testified about the cause and origin of the fire, which helped the jury determine whether the fire was caused by arson. Thus, Dr. DeHaan's testimony meets the requirements of Rule 702. We also believe that

the requirements of Rule 703 and the Supreme Court's holding in Daubert have been met. Dr. DeHaan's reliance on reports, photographs, and third-party observations, which may not have been admissible into evidence, served as a reliable basis for his testimony because these materials are facts or data "of a type reasonably relied upon by experts" in the field of fire cause and origin. See United States v. Lundy, 809 F.2d 392, 395 (7th Cir. 1987); United States v. Lawson, 653 F.2d 299, 302 (7th Cir. 1981); see also In re James Wilson Assocs., 965 F.2d 160, 172-73 (7th Cir. 1992).

In Lundy, this court allowed hearsay and third-party observations to be used by an expert of arson investigation in forming his opinion. See 809 F.2d at 394-95. Similarly, in Lawson, we allowed a psychiatrist testifying as an expert to rely on staff reports, interviews with other doctors, and background information from the Marine Corps and United States Attorney's Office to form the basis of his opinion. See 653 F.2d at 302. In both cases, we allowed these materials to form the basis for the expert's testimony because they were of a type reasonably relied on by experts in the field. Similarly, the Sixth Circuit, in United States v. Ashworth, 836 F.2d 260 (6th Cir. 1988), recognized that photographs are standard materials used by arson investigators. See id. at 264.

Here, Dr. DeHaan and the other experts called to the witness stand testified that photographs and reports are the type of materials usually relied on in arson investigation to form an opinion about the cause of the fire. The district court was entitled to credit that testimony and to conclude that the materials that Dr. DeHaan used as the basis for his testimony were of a type reasonably relied on by experts in his field and, thus, were an appropriate basis for his expert opinion.

2.

Ms. Gardner argues next that Dr. DeHaan's testimony was cumulative and therefore prejudicial. Rule 403 of the Federal Rules of Evidence states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. "The court's admission of evidence under Rule 403 of the Federal Rules of

Evidence is entitled to special deference. 'Only in an extreme case are appellate judges competent to second-guess the judgment of the person on the spot, the trial judge.'" United States v. Bradley, 145 F.3d 889, 892 (7th Cir. 1998) (quoting United States v. Crockett, 979 F.2d 1204, 1211 (7th Cir. 1992)). Determining whether testimony is cumulative rests within the sound discretion of the district court. See United States v. Kizeart, 102 F.3d 320, 325 (7th Cir. 1996).

"Evidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of the trial, with all the potential for confusion, as well as prejudice to other litigants, who must wait longer for their trial, that a long trial creates." United States v. Williams, 81 F.3d 1434, 1443 (7th Cir. 1996); see also Bradley, 145 F.3d at 894 (stating that a piece of evidence is not cumulative if its evidentiary value outweighs its contribution to the length of the trial).

Dr. DeHaan's testimony was not cumulative because the Government used it to reply to the cross-examination of its earlier experts. His testimony addressed whether the fire had an electrical source. This evidence was probative because, if faulty electrical wiring caused the fire, Ms. Gardner would not be guilty of arson. On the other hand, if faulty electrical wiring clearly did not cause the fire, then the investigators and the jury needed to search for an alternative source of the fire, such as arson. During the cross-examinations of the Government's other expert witnesses, Tankersley and Briggs, defense counsel suggested that the fire was not the result of arson but was caused by an electrical problem. The cross-examination of Tankersley demonstrated that he had not determined personally that the electrical system was not the cause of the fire but that he had based his opinion on the conclusions found in the reports of other scene investigators. The cross-examination of Briggs questioned his method for concluding that the electrical wiring did not cause the fire. It also noted that his written report lacked a conclusion that ruled out the electrical system. Because the defense had placed in question, through cross-examination, the thoroughness of the other experts' investigations, the district court certainly did not abuse its discretion in allowing Dr. DeHaan to testify on the same issue.

C.

Ms. Gardner submits that applying consecutive sentence terms for arson and for using fire to commit a federal felony is unconstitutional on Double Jeopardy and Eighth Amendment grounds./3

1.

Ms. Gardner first claims, in essence, that the statute violates the Double Jeopardy Clause of the Fifth Amendment. She submits that Congress did not intend to authorize separate and consecutive punishments for the offense of arson and for the offense of using fire to commit a federal felony.

This circuit already has confronted this issue in United States v. Zendeli, 180 F.3d 879 (7th Cir. 1999). In that case, we noted that the judicial task was to determine whether Congress, in enacting the statute, intended for separate sections of the statute to authorize the imposition of separate punishments./4

In Zendeli, because the language, structure, and legislative history of the statute could yield no clear answer,/5 we relied on the test enunciated by the Supreme Court in Blockburger v. United States, 284 U.S. 299 (1932):

The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

Id. at 304./6 In Zendeli, under indistinguishable circumstances, we held that each of the two statutory provisions involved here requires a different element that the other does not. To prove arson under sec. 844(i), the Government must show that a defendant damaged or attempted to damage "property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. sec. 844(i). To prove that a defendant used fire to commit a felony under sec. 844(h), the Government must show that the defendant committed a separate "felony which may be prosecuted in a court of the United States." 18 U.S.C. sec. 844(h). Here, that felony is mail fraud. The Government must have proven that Ms. Gardner made use of the United States mail to attempt to defraud the insurance company./7

A principled adherence, as dictated by the doctrines of stare decisis and precedent, to our decision in Zendeli requires that we hold that Ms. Gardner may be sentenced for arson, for mail

fraud, and for use of fire to commit a federal felony without violating the Double Jeopardy Clause of the Fifth Amendment. See Zendeli, 180 F.3d at 886; Nguyen, 28 F.3d at 485.

2.

Finally, Ms. Gardner claims that the statute violates the Eighth Amendment. However, although Ms. Gardner sets out the standard for a violation of the Eighth Amendment, she does not explain why this statute violates the Eighth Amendment or why this statute results in excessive punishment. Furthermore, "the level of punishment to be imposed for crimes is the business of Congress, not the courts. Only in very narrow circumstances has a punishment within statutory limits been held to violate the Eighth Amendment." United States v. Farmer, 73 F.3d 836, 840 (8th Cir. 1996).

Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

/1 Dr. DeHaan reviewed the reports from Tankersley, another fire marshal, and an insurance investigator.

/2 See United States v. Wilson, 2 F. Supp.2d 1170, 1171 (E.D. Wis. 1998) ("[M]ost crimes require only proof of an act and an intent to so act. Motive is usually relegated to the status of immateriality.").

/3 The statutory provision for arson states as follows:

(i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . . .

18 U.S.C. sec. 844(i). The statute for using fire to commit a felony states as follows:

(h) Whoever--

(1)  uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States, or

(2)  carries an explosive during the commission of any felony which may be prosecuted in a court of the United States,
. . . shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 5 years but not more than 15 years. . . .

18 U.S.C. sec. 844(h).

/4 See Garrett v. United States, 471 U.S. 773, 778 (1985) ("Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature--in this case Congress--intended that each violation be a separate offense."). See also United States v. Hayward, 6 F.3d 1241, 1245 (7th Cir. 1993) ("A court's starting point to determine the intent of Congress is the language of the statute itself."). If a statute clearly indicates on its face that Congress intended both statutory provisions to be applied for the same conduct, then the statute controls.

   If "[t]he provisions are unambiguous on their face and each authorizes punishment for a violation of its terms," then Congress intended punishment under each. Albernaz v. United States, 450 U.S. 333, 336 (1981); see also United States v. Corona, 108 F.3d 565, 572 (5th Cir. 1997) ("When multiple punishments are at issue, our inquiry focuses on whether Congress intended for the defendant's actions to be subject to the punishment received. If statutory language authorizes the punishment, there can be no double jeopardy violation."); cf. United States v. Fiore, 821 F.2d 127, 130 (2d Cir. 1987) ("If the offenses charged are set forth in different statutes or in distinct sections of a statute, and each section unambiguously authorizes punishment for a violation of its terms, it is ordinarily to be inferred that Congress intended to authorize punishment under each provision.").

/5 See Zendeli, 180 F.3d at 888 (Ripple, J., dubitante) (stating that, for sec. 844, "[t]here is simply no evidence in this statute, its structure, or the legislative history that Congress has authorized consecutive punishments for arson and for arson in the course of the commission of another felony"); see also United States v. Karlic, 997 F.2d 564, 571 (9th Cir. 1993); Fiore, 821 F.2d at 133 (Newman, J., concurring); Anti-Arson Act of 1982, Pub. L. No. 97-298, 96 Stat. 1319; H.R. Rep. No. 97-678, at 1 (1982), reprinted in 1982 U.S.C.C.A.N. 2631.

/6 See also Whalen v. United States, 445 U.S. 684, 693-94 (1980); Zendeli, 180 F.3d at 885-86 (7th

Cir. 1999); Corona, 108 F.3d at 572; United States v. Nguyen, 28 F.3d 477, 485 (5th Cir. 1994); Karlic, 997 F.2d at 570-71; Fiore, 821 F.2d at 130; United States v. Chaney, 559 F.2d 1094, 1096 (7th Cir. 1977).

/7 United States v. Chaney is not controlling. See Zendeli, 180 F.3d at 887 (Ripple, J., dubitante). In Chaney, the defendant was charged in Count I under sec. 844(i) with maliciously attempting to destroy a structure by means of an explosive and was charged in Count III under sec. 844(h) with knowingly using an explosive to commit a felony, that is, the felony of maliciously attempting to destroy a structure by means of an explosive. See Chaney, 559 F.2d at 1096. As this court discussed, a comparison of the two counts showed that the charges were identical except for which statutory provision they were charged under. See id. "Therefore, the evidence necessary to prove the offense charged under Count I would prove the offense charged under Count III, and vice versa." Id. Therefore, we concluded that, because the Double Jeopardy analysis asks whether each statutory provision requires proof of a fact which the other does not and because each count would be proved by identical evidence, the two counts constituted the same offense under the Double Jeopardy Clause. See id.